John DOE; and Local 3936 of the American Federation of Government Employees, Plaintiffs,

v.

Honorable Donald RICE, Secretary of the United States Air Force; Lt. General Conaway, Chief of the National Guard Bureau; Puerto Rico Air National Guard; William Miranda–Marin, the Adjutant General of the Commonwealth of Puerto Rico; Colonel Manuel A. Guzman of the Puerto Rico Air National Guard; Colonel Gilberto Colon, as Personnel Officer of the Puerto Rico Air National Guard; All Officials in Their Individual and Official Capacity, Defendants.

No. Civ. 91–1169CCC.

United States District Court,
D. Puerto Rico.

Aug. 31, 1992.

See also 776 F.Supp. 633.

Nora Vargas–Acosta, Vargas & Ramírez Law Offices, for plaintiffs.

Fidel Sevillano–del–Río, Asst. U.S. Atty., Mayra Maldonado, Dept. of Justice, Com. of Puerto Rico, for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This action for declaratory and injunctive relief arises from alleged violations to 42 U.S.C. §§ 1983, 1988, *et seq.* and the Fifth and Fourteenth Amendments of the Constitution of the United States. Plaintiffs John Doe, a former member of the Puerto Rico Air National Guard (PRANG) with over twenty-one years of civilian employment as a National Guard Technician, and Local 3936 of the American Federation of Government Employees, the union which represents National Guard technicians, brought this action alleging unlawful discrimination on the basis of a handicap (AIDS). Defendants include the Secretary of the Air Force, Chief of the National Guard Bureau, PRANG and various of its officials.

The undisputed facts are as follows:

Plaintiff John Doe has been a member of PRANG since March 1967. He was hired as technician pursuant to the National Guard Technician Act of 1968 in September 1969. On June 29, 1990, Doe tested positive for the Human Immune Deficiency Virus (HIV). On September 21, 1990 plaintiff received Special Order AC–73 by which defendant Colonel Manuel A. Guzmán, citing Air National Guard Regulation (ANGR) 39–10 Chapter 8 as his authority, informed him that effective September 17, 1990 he had been relieved of his duties, honorably discharged and transferred to the Standby Reserves. On October 16, 1990, he received a written communication from defendant Colonel Gilberto Colón, Personnel Officer of PRANG, informing him that he was no longer eligible to continue in his technician employment due to his discharge from military service. Various requests for revision of these decisions brought no replies. Plaintiffs filed this action.

Following an evidentiary hearing held on August 1, 1991, the preliminary issue of whether the Court had jurisdiction to entertain these matters, or whether Doe was required to exhaust administrative remedies was resolved in his favor in an Opinion and Order entered on November 7, 1991 (docket entry 32).

A consolidated hearing on the merits for preliminary and permanent injunction was held on December 16 through 18, 1991, and on February 13, 14, 18 and 19, 1992. The parties submitted their post-trial briefs on March 31, 1992.

Plaintiffs' action focuses on their primary contention—that ANGR 39–10 on its face and as interpreted and applied by defendants violates the Fifth and Fourteenth Amendments to the United States Constitution. Peripheral violations include allegations of noncompliance with 10 U.S.C. §§ 1201–1221, as well as procedural and substantive due process claims related to property rights, liberty rights and interests. We now address them in turn.

### ANGR 39–10

ANGR 39–10 Section F Acquired Immune Deficiency Syndrome at paragraph 8–25 states as follows:

 a. Members on active duty entitled to military medical health care and who

have serologic evidence of HIV infection (antibody positive) shall be medically evaluated to determine fitness for continued service. Those individuals who show no evidence of clinical illness or other impairment related to HIV shall not be separated on the basis of serologic evidence of HIV infection. Evaluation, once completed, must be forwarded to NGB/SG for evaluation and determination as a continued ANG service.

b. Members not entitled to military medical health care who display serologic evidence *will be transferred to the Standby Reserves if they cannot be used in a non-deployable position.*

(Emphasis ours.)

It is undisputed that John Doe was not on active military duty at the time of his discharge and transfer to the Standby Reserves, and that his medical care was privately provided through medical plan benefits to which he was entitled due to his technician employment. That is, Doe's case was processed under paragraph 8–25(b).

A major theme throughout plaintiffs' pleadings, which provides the theory for the case, is that this section directly contravenes the August 4, 1988 Policy Statement of the Secretary of Defense, which states at Paragraph B7:

Due to the high priority assigned to the continued medical evaluation of military personnel with serologic evidence of HIV infection, such individuals *shall be assigned within the United States.* Additionally, the *Secretaries of the Military may restrict individuals with serologic evidence of HIV infection to non-deployable units or positions for purposes of force readiness.* Further ... the Secretaries of the Military Departments *may, on a case by case basis, limit assignment* of such individuals

with respect to the nature and location of the duties performed in accordance with operational requirements.

(Emphasis ours.)

■ Seizing upon the only mandatory restriction—the limitation of assignment to within the United States—and pointing to the discretional nature of the limitation to non-deployable units for HIV seropositive reservists, the plaintiffs argue that Section 8–25 as interpreted and/or applied is discriminatory because it goes beyond the restriction of the Department of Defense.

In contesting the restriction of non-deployability for HIV seropositive reservists vis a vis the Department of Defense's discretional tone on the issue,[1] plaintiffs have ignored the reality of the policies and regulations. The Department of Defense, in its August 1988 statement, delegated to the Secretaries of the Military the decision to restrict seropositive members of their branches to non-deployable positions. The Department of the Air Force, on May 16, 1989, issued its *Policy on Identification, Surveillance and Administration of Personnel Infected with Human Immune Deficiency Virus* (HIV)—Action Memorandum in which at Section B, paragraph 9 it states:

Due to the high priority assigned to the continued medical evaluation of military personnel with serological evidence of HIV infection, such individuals shall only be assigned within the United States and not be deployed overseas. *Additionally, military personnel with serologic evidence of HIV shall only be assigned to non-deployable units and positions.* Further, ... the assignments of such personnel may be limited with respect to the nature and location of the duties performed in accordance with operational requirements.

---

1. In plaintiffs' Memorandum in Support of Motion for Preliminary and Permanent Injunction (docket entry 12) at p. 43, they state: "Certainly all enlisted personnel who test seropositive for the H.I.V. and are in the regular Army and Air Force are on active duty and are at any given moment deployable, yet they are allowed to continue in the service. Except for some possible accommodation, the regular Armed forces

are none the worse for keeping on these individuals." Repeated at page 33, Post–Trial Brief. We note, however, that plaintiffs did not raise as an issue in their complaint or present evidence at trial an equal protection claim related to disparate treatment of reservists vis a vis active duty regular military personnel. We, therefore, do not address this matter as it has not been properly raised before.

(Emphasis ours.) Thus, the Secretary of the Air Force, exercised the discretion to make non-deployability a mandatory requirement for HIV seropositive individuals. This policy statement was then notified for incorporation into the policy statement to all Air National Guard Units on July 2, 1989.[2] We, therefore, note that the paragraph 8–25(b) mandate did comply with the policy statements on HIV of both the Department of Defense and the Department of the Air Force in effect at the time that John Doe was transferred to the Standby Reserves.

John Doe indicated that his unit has not been mobilized outside the United States since 1967, although it has been mobilized to the United States about every two years. However, Doe himself has been deployed to Honduras, Venezuela and Panama for periods of seven to ten days.

Defendants' witness Sgt. Michael Romeo, Superintendent of Physician Standards, Medical Waivers and Aerospace Programs, clarified that the concept of deployability involves meeting specific medical standards, i.e., immunizations, specific training, ability to donate blood, in order to be considered medically qualified for worldwide deployment. Thus, an HIV seropositive reservist, although completely asymptomatic, would not be deployable worldwide due to, among other things, restricted ability to be immunized and inability to donate blood. With regard to deployability as a function of medical limitations, plaintiff's own medical expert, Dr. Rafael Rivera–Castaño, testified that persons with HIV are subject to opportunistic diseases, that one cannot tell when symptoms might appear. HIV patients must avoid possible bruises, cuts, and individuals with other diseases; good nutrition, rest and exercise are very important.

Dr. Carlos León–Valiente, plaintiffs' expert on HIV and who has treated John Doe, testified that at the time of his discharge, Doe was asymptomatic and not disabled.

On cross-examination he stated that plaintiff could travel as long as he does not expose himself to places dangerous not only to him but to others, such as Peru which was having a cholera epidemic. Doe could not travel to places where he would be exposed to bacterial infection or fungi, or places for which he would require vaccinations, such as cities where epidemics are present or where possibility of exposure to unknown disease exists. Dr. León–Valiente also emphasized the possibility and unpredictability of the onset of symptoms.

Further explanation of the concept of deployability was provided by the testimony and Declaration (defendants' Exhibit A) of Joseph Robinson, Jr., Chief of Enlisted Policies and Programs, National Guard Bureau, who is also a captain in the United States Air Force. Captain Robinson explained that the National Guard is different from the regular active duty Air Force in that the National Guard's whole reason for being is to be ready to be deployed, generally outside of the United States. An individual guard unit has a very limited number of positions identified as non-deployable. All of the rest are deployable.

They further contend that he was not given a hearing to determine, among other things, the necessity of his transfer to a non-deployable position. Plaintiffs' argument focuses on the fact that, although Doe's squadron is deployable, it has not been mobilized overseas since 1967.

Luis José Márquez–Ramos, a civilian technician employed by PRANG for nineteen years, who is also President of plaintiff Union, testified that he has been deployed seven times outside of Puerto Rico, four times to various states and three times to Panama, for relatively short assignments. Explaining that deployment usually involves designation of only a few people to other duty states, Márquez–Ramos stated that usually more reservists want to be sent overseas than there are

---

**2.** Plaintiffs emphasize, at page 40 of their Memorandum in Support of Preliminary and Permanent Injunction that the July 2, 1989 memorandum clarifies that memo 89–62 represented "the *current* Air Force policy and *supersedes* all pre-vious documents on this issue and most importantly that *this policy applies to the Air National Guard* as well.... (Emphasis in original.) Plaintiff cites this with approval.

opportunities to do so available. The term "mobilization" refers to deployment of the entire squadron. The squadron practices for mobilization and every three years simulates such an event. He also testified that the deployment determination is a military matter and that disciplinary action can be taken against an individual who refuses deployment.

■ It is argued that the National Guard is primarily a state militia which is only federalized for mobilization purposes. Likewise, plaintiffs also contend that the possibility of John Doe's being mobilized for active duty overseas is minimal, as well as the general applicability of the Bill of Rights to all citizens, discrimination as a major obstacle in combating the spread of AIDS, the United States Public Health policy against discrimination on the basis of HIV Status or AIDS, all necessitate that the Court rule against this allegedly discriminatory action by the National Guard. Their arguments, however, fail to take into consideration the unique role of the military establishment. "A heavy reliance on readiness needs has guided the evolution of DOD and Air Force HIV policy." Colonel John A. Anderson, United States Air Force, et al *AIDS Issues in the Military*, 32 Air Force L.Rev. 353, 362 (1990). Decisions regarding the dual function of the National Guard, that it has set as a goal force readiness for mobilization, and the deployability of reservists who must meet strict physical standards, are matters which can best be entrusted to the military itself. *See Peñagaricano v. Llenza*, 747 F.2d 55 (1st Cir. 1984); *Mindes v. Seaman*, 453 F.2d 197 (5th Cir.1971). That the Air Force has de-

cided that reservists who cannot be deployed overseas cannot remain in deployable positions must be left to military discretion and expertise.

■ Plaintiffs also argue that defendants did not follow their own policy by failing to give John Doe a hearing and notice, pursuant to ANGR 39–10, paragraph 8–26 prior to his transfer to the Standby Reserves.[3] Paragraph 8–26 contains the procedure for discharge, incorporating the notice procedure of Chapter 1, Section D, as well as the Administrative Discharge Board of paragraph 1–23. While ANGR 39–10 paragraph 1–23 requires that the reservists be offered the opportunity of a hearing before the administrative discharge board, the applicability of Paragraph 8–26 to HIV seropositive reservists was derogated on August 10, 1990,[4] prior to Doe's discharge,[5] and therefore he had no right to a hearing and notice under this paragraph. As explained by Captain Robinson, the change was a recognition that an administrative discharge board was not the proper forum to deal with these cases. The administrative discharge board is made up of members of the unit who do not have medical backgrounds. Moreover, considering that plaintiffs themselves have consistently agreed that the fitness of an HIV seropositive reservist to continue his duties should be a medical determination, we find their challenge on this point contradictory.

Plaintiffs also take issue with the fact that no medical board was convened. The procedure followed, as described by Sgt. Romeo, calls for convening a medical board *after* it is determined that a non-deployable

---

**3.** Paragraph 8–26 states as follows:
Procedure: The notification procedure (Chapter 1, Section D) is required for separations. Comply with paragraph 1–23 for involuntary discharges.

**4.** The actual August 10, 1990 notification, which forms part of defendant's Exhibit A, states as follows in pertinent part:
SUBJECT: Update on Regulation Corrections; ANGR 39–10 dated 15 Sep 1987.
1. The information in ANGR 39–10, Administrative Separation of Airman, Paragraph 8–26, is no longer applicable and will be changed in the revision of ANGR 39–10.

**5.** Doe testified that he believes it was during the August 1990 weekend exercise that he was told by Dr. Agapito Miranda, the base doctor, that he had tested positive for HIV and the information would be passed on to the base commander to take appropriate action. He also advised Doe to see a private doctor, recommending Dr. Valiente. During the weekend exercise of September 1990 he was told that he would be severed from the National Guard. He was told that on a Sunday, and that he had thirty days from Monday to take sick leave and then he would be discontinued from the technician program.

position(s) exists for which the reservist would otherwise qualify. Inasmuch as the initial policy determination required that Doe be restricted to a non-deployable position, and no compatible [6] non-deployable position was available for him,[7] defendants determined that a medical review board was not needed to evaluate plaintiffs' particular fitness to fill a non-existent job. Moreover, considering that reservists such as Doe who are not on extended active duty do not receive their medical care through the military establishment, the National Guard does not put the reservist to the expense of medical testing for the futile purpose of evaluation by a medical board that would have no position for which to evaluate his fitness. We, therefore, find that the procedure described by Captain Robinson falls within the parameters of the further case-by-case consideration to determine the specific suitability of an individual HIV positive reservist for an available position.

██ Plaintiffs' allegation that ANGR 39–10, as applied, violates the Department of Defense and Air Force policies prohibiting the use of results obtained from laboratory tests for HIV as the sole basis for the service member's separation are equally meritless. It is clear from the evidence that John Doe's separation was based upon the fact that he tested seropositive *and* a non-deployable position compatible to his could not be found. Moreover, both policies allow for separation as specifically authorized in the corresponding memorandum. In this case, the policy specifically states that reservists not on extended ac-

tive duty can be involuntarily transferred to the Standby Reserve, if they cannot be utilized in the Selected Reserve.[8]

### Property Interest in Technician Employment

██ John Doe's allegation of infringement of his due process rights by PRANG's failure to give him any hearing or notify him of his right to appeal prior to his dismissal is belied by his lack of a property interest in the technician position he occupied at the time of his separation, pursuant to the basic statutory provision which created the same. Section 2(1) of the National Guard Technicians Act, 32 U.S.C. § 709 at (b) states that:

> Except as prescribed by the Secretary concerned, a technician employed under subsection (a) *shall, while so employed, be a member of the National Guard* and hold the military grade specified by the Secretary concerned for that position.

(Emphasis ours.) 32 U.S.C. § 709(e) further states that:

> Notwithstanding any other provision of law and under regulations prescribed by the Secretary concerned—
>
> (1) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned *shall be promptly separated from his technician employment by the adju-*

**6.** Captain Robinson testified that the necessity of compatibility means that the military position must coincide with the civilian job because the reservists must still be proficient in the civilian position.

**7.** Plaintiffs' only evidence on this matter was a vague hearsay statement by Márquez–Ramos that he had been told there were vacant non-deployable positions. He had no information as to whether they were compatible to Doe's civilian position. Major Nilda Urrutia, the Military Personnel Management Officer testified that she examined the Managing Unit Documents as early as late July or early August 1990, to search for an available non-deployable posi-

tion for Doe, and that her efforts to locate such a position continued through 1991. She also testified that she looked for positions in other units as well. There was some confusion with the documents which were brought to court for the hearing inasmuch as she brought 1991 documents instead of the ones which she would have actually used. She explained that there is very little change in the documents, and emphasized that she had searched for a non-deployable position at the time she stated. We give complete credibility to her testimony.

**8.** Captain Robinson testified that when a non-deployable position is available the individual is placed in the Selective Reserve.

*tant general of the jurisdiction concerned;*

. . . .

(6) a technician *shall be notified in writing* of the termination of his employment as a technician and such notification shall be given *at least thirty days prior to the termination date* of such employment.

(Emphasis ours.) As is evident from the statutory language, any property interest in a technician position ceases with separation from the National Guard. The termination is mandatory. Courts have affirmed that civilian technicians lose any entitlement to their positions when their enlistment as a military member of the National Guard ends. *See Tennessee v. Dunlap*, 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976). The only procedural due process required is the thirty days written notice established by statute, which in this case was given to Doe.[9]

### Retirement

Although plaintiffs make no claim in their complaint, they argue at page 36 of their memo in Support of Preliminary and Permanent Injunction[10] that defendants' actions violate title 10 U.S.C. § 1214 and 1215 which relate to the procedure for retirement or separation for physical disability. Their argument is fruitless, however, in that these sections are inapplicable to plaintiff's case. Doe was not retired due to a physical disability. Extensive evidence

supports plaintiffs' own contention that he is not disabled. Rather, it is the *sui generis* situation of an administrative discharge based upon medical considerations which makes Doe unsuitable to continue in a deployable military position. Another argument similarly made by plaintiffs, is an alleged violation of 10 U.S.C. § 1004 in that the Governor of Puerto Rico failed to approve Doe's transfer. Section 1004(c) is referred to out of context; the relevant section states, in pertinent part, that " . . . no member of the . . . Air National Guard of the United States may be transferred under this subsection without the consent of the governor *or other appropriate authority of the jurisdiction concerned."* (Emphasis ours.) The plaintiffs, however, have failed to present any evidence to demonstrate that Doe's transfer to the Standby Reserve was made without the appropriate authorization; that is, they have not shown that the decision was taken by individuals without the authority to do so.[11]

### Liberty Interests

Allegations of infringement of Doe's liberty interest are somewhat puzzling. Specifically mentioned are his right to engage in his occupation, the right to education, the right to seek employment and the right to contract. Plaintiffs fail to identify how these rights are affected, nor do we see any infringement.[12]

---

**9.** A termination letter dated October 16, 1990 was sent to plaintiff informing him of the mandatory separation due to his discharge from PRANG. The letter states that the separation from his technician employment would be no earlier than November 19, 1990. (Plaintiff's Exhibit 5.)

**10.** Similarly, although no claim is made under the Rehabilitation Act, 29 U.S.C. § 794, defendant William Miranda–Marin has extensively argued its inapplicability. *See* Opposition to the Motion for Preliminary Injunction, Motion to Dismiss and Response to Order to Show Cause (docket entry 7) repeated in their Motion in Compliance with Court Order of February 19, 1992 (docket entry 44).

**11.** Footnote 3 at page 3 of plaintiff's Post–Trial Brief, states that "the authority to separate members from the Air National Guard rests with the State Adjutant General who may fur-

ther delegate to a Commander. . . ." Inasmuch as Doe's discharge order was issued by PRANG Commander Colonel Manuel Guzmán, we question plaintiff's having raised this as an argument.

**12.** Doe originally requested that his identity be maintained confidential in order to "maintain his seropositive status confidential, exercise his right to privacy and protect himself and his family from discrimination and stigmatization." Complaint, paragraph 3. If what he means is that these rights are infringed because his seropositive status may result in discrimination against him, making it difficult to obtain other employment, education or favorable contractual agreements, we can only remind Doe that it was his decision to publicize in a major newspaper his identity and his seropositive status.

Plaintiffs cite five cases—two prisoner cases, an abortion law case, an education law case, and only one employment prohibition case—without explaining how any of these cases apply to the facts at bar. We note the case of *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), which dealt with the exclusion of all persons except American citizens and natives of Samoa from employment in most positions of federal service. It is apparent here, however, that Doe was restricted only from engaging in a deployable position in the military service.

The Court is not insensitive to the extreme hardships faced by plaintiff resulting from his situation. However, given the medical testimony regarding the medical restrictions and requirements of HIV positive patients, and the non-justiciability of questions related to military force readiness, mobilization, deployability and the dual function of the National Guard, we find that plaintiffs have failed to demonstrate that defendants' application or interpretation of the PRANG regulations has violated their constitutional rights.

Accordingly, this action is DISMISSED. SO ORDERED.