USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 92-2338 OSCAR CHARLES, Plaintiff, Appellant, v. HONORABLE DONALD RICE, SECRETARY OF THE UNITED STATES AIR FORCE, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ William Ramirez-Hernandez, with whom Paula Sciabarrasi, Vargas & __________________________ __________________ ________ Ramirez Law Office, and Charles S. Hey-Maestre, Sabana Education and __________________ ______________________ Civil Rights Project, were on brief for appellant. Michael S. Raab, Attorney, Civil Division, Department of Justice, _______________ with whom Guillermo Gil, United States Attorney, Frank W. Hunger, ______________ ________________ Assistant Attorney General, Anthony J. Steinmeyer, Attorney, Civil _______________________ Division, Department of Justice, and Col. Raul F. Barbara, Lt. Col. _____________________ ________ Conrad Von Wald, Major Carla S. Walgenbach, and Major Patricia A. ________________ __________________________ __________________ Kerns, Of Counsel, Department of the Air Force, General Litigation _____ Division, were on brief for appellees Honorable Donald Rice, Secretary of the United States Air Force, and Lt. General Conaway, Chief, National Guard Bureau. Carlos Lugo-Fiol, Deputy Solicitor General for the Commonwealth ________________ of Puerto Rico, with whom Pedro A. Delgado-Hernandez, Solicitor ____________________________ General, was on brief for appellees William Miranda-Marin, the Adjutant General of the Commonwealth of Puerto Rico, Colonel Manuel A. Guzman, of the Puerto Rico Air National Guard, and Colonel Gilberto Colon, Personnel Officer, Puerto Rico Air National Guard. ____________________ July 14, 1994 ____________________ BOWNES, Senior Circuit Judge. After more than BOWNES, Senior Circuit Judge. _____________________ twenty years of service in the Puerto Rico Air National Guard (PRANG) and employment as a National Guard technician, plaintiff-appellant, Oscar Charles, tested positive for the Human Immunodeficiency Virus (HIV) and was discharged from PRANG and from his technician job. Plaintiff filed an action under 42 U.S.C. 1983 seeking declaratory relief, reinstatement, and back pay from defendants-appellees, the Secretary of the United States Air Force, the Chief of the United States National Guard Bureau, PRANG, the Adjutant General of Puerto Rico, and two PRANG officers. The district court reached the merits and ruled in favor of defendants. See Doe v. Rice, 800 F. Supp. 1041 (D.P.R. 1992). We vacate ___ ___ ____ the decision with respect to plaintiff's claim for back pay for his technician job, but affirm the decision on the merits in all other respects. I. I. BACKGROUND BACKGROUND __________ National Guard National Guard ______________ Before stating the facts immediately relevant to plaintiff's case, we provide the following description of the National Guard. The Guard is a hybrid state and federal -2- 2 organization.1 While a part of the Armed Forces of the United States, the Guard occupies a distinct role in the federal structure that does not fit neatly within the scope of either state or national concerns. In each state the National Guard is a state agency, under state authority and control. At the same time, federal law accounts, to a significant extent, for the composition and function of the Guard. Accordingly, the Guard may serve the state in times of civil strife within its borders while also being available for federal service during national emergencies. Knutson v. Wisconsin Air Nat'l Guard, 995 F.2d 765, 767 (7th _______ _________________________ Cir.), cert. denied, 114 S. Ct. 347 (1993). _____ ______ The governor and his or her appointee, the Adjutant General, command the Guard in each state. See, e.g., P.R. ___ ____ Laws Ann. tit. 25, 2058-2059; see also 32 U.S.C. 314. ___ ____ The Defense Department, the Secretaries of the Army and Air Force, and the National Guard Bureau prescribe regulations and issue orders to organize, discipline, and govern the Guard. 32 U.S.C. 110. States that fail to comply with federal regulations risk forfeiture of federal funds ____________________ 1. National Guard units may be established in the states, territories, Puerto Rico, and the District of Columbia. 32 U.S.C. 101(6). For the sake of convenience, we refer to all these entities as states. The differences between Puerto Rico and a state are immaterial in this context. Penagaricano v. Llenza, 747 F.2d 55, 56 n.1 (1st Cir. 1984), ____________ ______ overruled on other grounds by Wright v. Park, 5 F.3d 586, 591 _________ __ _____ _______ __ ______ ____ (1st Cir. 1993). -3- 3 allocated to organize, equip, and arm state Guards. Id. ___ 101, 107, 108, 501; Knutson, 995 F.2d at 767. _______ Every member of the state Air National Guard is also enlisted in a federal organization known as the Air National Guard of the United States (ANGUS), a component of the Ready Reserves of the Armed Forces, which is activated when the Guard is called into federal service. 10 U.S.C. 261, 269, 8079, 8261; 32 U.S.C. 101, 301; Perpich v. _______ Department of Defense, 496 U.S. 334, 345-46 (1990). _____________________ Many Guard members, so-called "weekenders," serve only part-time, by participating in drills and maneuvers on weekends and in the summer. National Guard technicians participate in those activities, but also hold full-time civilian jobs with their units. Guard technicians are federal civil servants, hired and supervised by the state Adjutant General. 32 U.S.C. 709. Technicians must maintain membership in the state Guard to remain qualified for federal employment. Id. ___ Plaintiff's Separation from Service Plaintiff's Separation from Service ___________________________________ Plaintiff enlisted in PRANG in 1967 and was hired as a Guard technician two years later. From 1969 until he was discharged, he drew two salaries: one from PRANG, and the other from the federal government for his services as an aircraft maintenance technician. In June 1990, he tested positive for HIV in a routine screening of military -4- 4 personnel. That result was confirmed by a second test in June or early July 1990. Plaintiff received an order on September 21, 1990, stating that he had been honorably discharged from PRANG on September 17, 1990, and transferred from the Ready Reserve to the Standby Reserve. That order was based on Air National Guard Regulation (ANGR) 39-10, which states that members of the Guard testing positive for HIV shall be transferred to the Standby Reserve unless a "nondeployable position" is available. ANGR 39-10 8-25. "Deployability," according to the record, refers to the ability to be sent anywhere in the world for duty. The district court heard testimony that most Guard positions are classified as deployable. On October 16, 1990, plaintiff was notified that his eligibility for employment as a technician ended when he was discharged from the Guard. Plaintiff was advised that he would be separated from federal employment after November 19, 1990. Plaintiff's requests for revocation of these orders were unavailing. In addition, his application for disability benefits was denied because he was not physically disabled. Thereafter, plaintiff filed suit in the United States District Court for the District of Puerto Rico, alleging that ANGR 39-10 was invalid, and that his discharge from PRANG and from his technician job violated National -5- 5 Guard regulations, Defense Department policy, and the principles of due process and equal protection. Plaintiff sought reinstatement and back pay for his military and civilian jobs, as well as a declaratory judgment that ANGR 39-10 was invalid. After prevailing in several pretrial skirmishes,2 plaintiff was ultimately unsuccessful when the court decided his case on the merits. Plaintiff remained asymptomatic at the time of trial. Issues Issues ______ The issues on appeal arise from the trial court's decision that ANGR 39-10 was valid, and that plaintiff's separation from PRANG and from his federal position did not violate due process and equal protection principles. In addition to assailing several of the court's factual findings, plaintiff raises the following legal issues: [1] whether the lack of a hearing upon his discharge violated ANGR 39-10 and his right to procedural due process; [2] whether ANGR 39-10 conflicted with Defense Department policy; [3] whether ANGR 39-10 violated his right to equal ____________________ 2. The district court issued interlocutory orders that plaintiff's case was justiciable, and that plaintiff was not required to seek relief from the Air Force Board for the Correction of Military Records prior to filing his civil suit. Those issues have not been briefed by the parties on appeal, and we do not address them in this case. For the same reason, we do not address whether defendants can be said to have acted under color of state law in discharging plaintiff. -6- 6 protection; and [4] whether he was entitled to a hearing before a medical board. II. II. MERITS MERITS ______ Regulations Regulations ___________ Plaintiff argues that PRANG failed to follow ANGR 39-10 in discharging him. At the time of the discharge, that regulation provided in pertinent part: Members [of the Air National Guard] not entitled to military medical health care who display serologic evidence [of HIV infection] will be transferred to the Standby Reserves if they cannot be used in a non-deployable position. These members will be referred to their private physicians for medical care and counseling. ANGR 39-10 8-25(b). Plaintiff does not argue that PRANG lacked the authority to discharge him once he was transferred to the Standby Reserve. Rather, plaintiff's argument is that PRANG did not follow the procedures required by ANGR 39-10 when he was transferred to the Standby Reserve. The court found that plaintiff was discharged from PRANG and transferred to the Standby Reserve after PRANG conducted an unsuccessful search for a nondeployable position compatible with plaintiff's civil technician job. We review the findings for clear error, Fed. R. Civ. P. 52(a), paying heed to the district court's superior position to gauge the -7- 7 credibility of witnesses. Dedham Water Co. v. Cumberland _________________ __________ Farms Dairy, Inc., 972 F.2d 453, 457 (1st Cir. 1992). _________________ In this case, we find no error in the determination that a PRANG personnel officer, Major Urutia, had conducted an adequate--but ultimately fruitless--search from July or August of 1990 into 1991 for a vacant, nondeployable position for plaintiff. Urutia testified that the search for a vacant position extended beyond plaintiff's own unit into other units and took into consideration plaintiff's tactical, environmental, and electrical systems expertise. Urutia testified that she was unable to find a vacant nondeployable military position compatible with plaintiff's qualifications. A unit manning document compiled in August 1990, as well as the testimony of Julio Godreau Marrero, an officer in plaintiff's squadron, corroborated Urutia's testimony. The record contains two statements regarding vacant nondeployable positions: one witness stated that he had heard--but was unable to verify--that a cook's position was available, and another witness testified that he had heard that a switchboard operator position was vacant in late December 1991. Even if we were to assume that these hearsay statements were reliable, but cf. Doe, 800 F. Supp. at 1047 ___ ___ ___ n.7 (describing one of the statements as "vague hearsay"), there is nothing in the record indicating that either job was compatible with plaintiff's position as an aircraft -8- 8 maintenance technician. Plaintiff has not challenged the district court's finding that the Air Force considers compatibility between a Guard member's military and civilian technician positions necessary. Id. at 1047 & n.6. We find ___ ample support in the record for the district court's finding that no suitable, nondeployable positions were available. Consequently, we conclude that plaintiff's discharge from PRANG and transfer to the Standby Reserve did not violate ANGR 39-10 8-25. Plaintiff next attacks the absence of a hearing accompanying his discharge as violative of ANGR 39-10. According to plaintiff, paragraph 1-23 of ANGR 39-10 guaranteed him a hearing. That paragraph provided: Unless otherwise indicated, airman [sic] recommended for discharge under [ANGR 39- 10] will be offered an opportunity for administrative discharge board [procedures] . . . . ANGR 39-10 1-23. Prior to plaintiff's discharge, however, ANGR 39-10 was amended as follows: Effective immediately [August 10, 1990,] _________________________________________ members processed [in accordance with] _________________________________________ ANGR 39-10, para 8-25 will not be _________________________________________ notified nor offered an opportunity for _________________________________________ administrative discharge board _________________________________________ procedures. The upcoming revision of _______________ ANGR 39-10 will indicate these cases will be administered through appropriate medical channels. (Emphasis added.) -9- 9 Citing Nicholson v. Brown, 599 F.2d 639, 648 (5th _________ _____ Cir. 1979), for the proposition that an agency's "application to a case of new principles announced in the course of deciding that case may be so tinged with unfairness as to amount to an abuse" of discretion, plaintiff argues that the amendment was invalid as to him. While we agree that the amendment became effective after he tested positive for HIV, we disagree that it constituted a new rule developed in the course of a proceeding affecting plaintiff. Rather, the amendment to ANGR 39-10 was procedural, not substantive, and became effective before plaintiff's discharge was processed. "The [procedural] regulations in force at the time administrative proceedings take place govern, not those in effect at some earlier time when the events giving rise to the action occurred." Chilcott v. Orr, 747 F.2d 29, 34 (1st ________ ___ Cir. 1984); accord Alberico v. United States, 783 F.2d 1024, ______ ________ _____________ 1028 (Fed. Cir. 1986). Accordingly, the amendment to ANGR 39-10 deleting the right to an administrative hearing applied to plaintiff's case. Plaintiff attempts to impugn the amendment by arguing that it is analogous to a bill of attainder, and that it was never formally adopted. A bill of attainder is a law that inflicts punishment upon identifiable members of a class without providing a judicial trial. Nixon v. Administrator _____ _____________ of Gen. Servs., 433 U.S. 425, 468-69 (1977). ______________ -10- 10 Plaintiff's allegations are unsupported by the record. Captain Robinson, the National Guard Bureau officer responsible for the amendment to ANGR 39-10, testified that he proposed it in 1989 to eliminate unnecessary procedures where the individual's HIV status was undisputed, and where there were no nondeployable positions available. According to Robinson, only if a nondeployable position were available would further procedures be warranted to make a medical determination of whether the HIV infection would interfere with the duties of that position. An administrative board, however, could not make such an evaluation because it lacks a medical faculty. And because Guard members are generally not entitled to military medical health care, the infected individual would have to pay for any additional medical tests. It is undisputed that plaintiff's status in the Guard did not entitle him to military health care. Robinson testified that his superiors approved the amendment and that it became effective on August 10, 1990. The uncontradicted evidence thus indicates that the amendment was a duly- approved, general policy change, designed to effect the nonpunitive purpose of eliminating unnecessary, costly procedures. See Alberico, 783 F.2d at 1028 (rejecting ___ ________ argument that generally-applicable amendment of regulation affecting plaintiff's service record constituted bill of -11- 11 attainder, even though amendment was "certainly inspired by his case"). HIV Policy HIV Policy __________ Plaintiff's next argument is that his discharge violated Defense Department policy. There are two prongs to plaintiff's argument. First, plaintiff quotes the following policy statement from the Defense Department and the Air Force, regarding active duty personnel infected with HIV, in ___________ an effort to prove that ANGR 39-10 conflicted with Department policy: Individuals with serologic evidence of HIV infection and who show no evidence of clinical illness or other indication of immunologic or neurologic impairment related to HIV infection, shall not be _____________ separated solely on the basis of _________________________________________ serologic evidence of HIV infection. ____________________________________ (Emphasis added.) Plaintiff's attempt to use that policy statement to undermine ANGR 39-10 is unavailing, however, because he was a reservist, not on active duty. There is a provision regarding reservists with HIV in each of the memoranda containing that policy statement. The Defense Department policy states that "the Secretaries of the Military Departments may restrict individuals [in the Reserves] with serologic evidence of HIV infection to nondeployable units or positions for purposes of force readiness." Air Force policy, in turn, states that reservists "shall be transferred to the Standby Reserve, only -12- 12 if they cannot be utilized in the Selected [i.e., Ready] ____ Reserve," and that the decision regarding fitness for the Selected Reserve must take into account that "military personnel [with HIV] shall only be assigned to nondeployable units and positions." In this case, plaintiff was not separated solely because of his HIV condition. He was transferred to the Standby Reserve and discharged from PRANG because he tested positive for HIV and there were no compatible, nondeployable positions available. The second prong of plaintiff's argument is that the Secretary of the Air Force allegedly abused his discretion in restricting reservists with HIV to nondeployable positions. A Defense Department policy provided the Secretary with the authority to make such a restriction "for purposes of force readiness." According to plaintiff, the restriction is groundless because persons with HIV can lead normal lives. Our standard of review of decisions committed to an agency's discretion is invariably deferential. See New ___ ___ England Legal Found. v. Massachusetts Port Auth., 883 F.2d _____________________ ________________________ 157, 169 (1st Cir. 1989). And in the context of a decision such as the Secretary's, in which "force readiness" is at issue, courts must be especially circumspect. The Supreme Court has stated that "it is difficult to conceive of an area of governmental activity in which the courts have less -13- 13 competence." Gilligan v. Morgan, 413 U.S. 1, 10 (1973); see ________ ______ ___ also Chilcott, 747 F.2d at 32 ("Interference by the judiciary ____ ________ with the administration of the military would undermine this nation's ability to maintain a disciplined and ready fighting force."). The record provides ample support for our finding that the Secretary did not abuse his discretion in adopting the policy underlying ANGR 39-10. The Air Force Ready Reserve (including the National Guard) makes demands of its members that civilians might not normally face, and these demands bear on "force readiness." The National Guard's "whole reason for being is to be ready to be deployed, generally outside of the United States." Doe, 800 F. Supp. ___ at 1045. There is ample support for the finding that persons with HIV who are asymptomatic are not deployable because of their restricted capacity to be immunized, their inability to donate blood, and the unpredictability of the onset of symptoms. Id. It follows that force readiness is affected ___ when nondeployable persons staff deployable positions. No further criticism of the Secretary's decision is warranted under the circumstances. Equal Protection Equal Protection ________________ Plaintiff's next argument is that ANGR 39-10 on its face and as applied violated his right to equal protection. Plaintiff argues in his brief that policies of the Department -14- 14 of Defense and Air Force draw an invalid distinction between reservists and active duty personnel by permitting the former to be discharged solely because of their HIV status, while guaranteeing to the latter the right not to be discharged on the basis of HIV infection alone. The district court declined to reach a similar issue in its order because plaintiff did not adequately raise it in his complaint or at trial. See Doe, 800 F. Supp. at ___ ___ 1044 n.1. Our review of the record substantiates that finding. While plaintiff flagged the issue in his posttrial brief and in his memorandum supporting his motion for an injunction, his complaint alleged that he suffered a violation of equal protection because of his HIV status, not because of his status as a reservist. Even if the issue were preserved, we would find it groundless. The policies and regulations at issue in this case do not mandate that reservists be separated solely on the basis of HIV infection. Rather, a reservist with HIV is transferred to the Standby Reserve only if there are no nondeployable positions available. To the extent plaintiff seeks appellate review of the equal protection issue alleged in his complaint, i.e., ____ discrimination based on his HIV condition, we deem the matter waived because plaintiff has not argued it on appeal in more -15- 15 than a perfunctory manner. See Gamma Audio & Video, Inc. v. ___ __________________________ Ean-Chea, 11 F.3d 1106, 1113 (1st Cir. 1993). ________ Due Process Due Process ___________ Plaintiff's argument on appeal relating to the constitutional right to due process is also deficient. Although his brief refers to the right to due process, he made no explicit argument that the Due Process Clause by itself required PRANG to provide notice and a hearing. The essence of his argument on appeal is captured in the following quotation: "Certainly, at a minimum, due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, requires that the Air Force follow its own regulations in discharging an airman from the Air Force, providing the procedural right to the affected person set forth by applicable law and regulations." Br. for Appellant, 18-19. Plaintiff did not assert in his brief that he suffered a deprivation of any protected liberty or property interest. Moreover, he cited no statute, regulation, rule, or other basis for establishing a property interest in his position in the Guard. Accordingly, we conclude that plaintiff waived the issue. Playboy Enters. v. _______________ Public Serv. Comm'n, 906 F.2d 25, 40 (1st Cir.), cert. ____________________ _____ denied, 498 U.S. 959 (1990) ("An appellant waives any issue ______ which it does not adequately raise in its initial brief, because `in preparing briefs and arguments, an appellee is -16- 16 entitled to rely on the content of an appellant's brief for the scope of the issues appealed.'" (quoting Pignons S.A. de _______________ Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. _________ _______________ 1983))).3 Where the issue is not one easily resolved in the appellant's favor, full briefing is especially important. Puerto Rico law and federal law are similar in stating that National Guard members may be discharged or transferred in accordance with regulations, with the approval of an appropriate authority. Compare P.R. Laws Ann. tit. 25, _______ 2072 with 10 U.S.C. 269(e), 1001(b). Courts have ____ generally held that there is no property interest in continuing employment in the military under such circumstances. See, e.g., Rich v. Secretary of the Army, 735 ___ ____ ____ _____________________ F.2d 1220, 1226 (10th Cir. 1984) (enlistee discharged according to regulations lacked property interest in remainder of enlistment term); accord Guerra v. Scruggs, 942 ______ ______ _______ ____________________ 3. Plaintiff stated at oral argument that the record contained evidence that he held a property right in his military position in the form of a "retention letter." While that letter, dated June 20, 1990, informed plaintiff that he had been selected "for continued retention" in ANGUS through 1992, it also contained the following caveat: "Selection for continued retention . . . does not preclude applicable military authority from separating you for other reasons [in accordance with] applicable ANG or USAF regulations . . . ." We need not decide whether plaintiff had a "legitimate claim of entitlement" to continued employment, or whether the letter's caveat and the existence of ANGR 39-10 rendered any putative interest at most a "unilateral expectation," Board _____ of Regents v. Roth, 408 U.S. 564, 577 (1972), because __________ ____ plaintiff waived the issue. -17- 17 F.2d 270, 278 (4th Cir. 1991); see also Beller v. Middendorf, ___ ____ ______ __________ 632 F.2d 788, 805 (9th Cir. 1980) (enlistee held no property interest in remainder of enlistment term because no reasonable expectation of continued employment existed once enlistee was found to be within regulatory class of dischargeable persons), cert. denied, 452 U.S. 905 (1981); _____ ______ cf. Navas v. Gonzalez Vales, 752 F.2d 765, 768 (1st Cir. ___ _____ ______________ 1985) (officer lacks property interest in military employment); Fredericks v. Vartanian, 694 F.2d 891, 893-94 __________ _________ (1st Cir. 1982) (member of state Guard did not hold property interest in his rank, where state law did not place any relevant restrictions on commanding officer's authority to demote him). Because of plaintiff's failure to develop the argument on appeal, we decline to consider whether the constitution required PRANG to provide notice and a hearing. Entitlement to Medical Board Review Entitlement to Medical Board Review ___________________________________ Finally, plaintiff assails the district court's conclusion that he was not entitled to a medical board hearing because he suffered "the sui generis situation of an ___ _______ administrative discharge based upon medical considerations." Doe, 800 F. Supp. at 1048. A medical board is responsible ___ for determining an individual's entitlement to disability benefits. Plaintiff argues that he has a right to a medical board review under 10 U.S.C. 1214-1215 because he was -18- 18 discharged as a result of his medical condition. Under 1214, "[n]o member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it." The problem with plaintiff's argument is that he produced no evidence which would have entitled him to medical board review. It is undisputed that plaintiff is not medically disabled. A "physical disability" must be the reason for discharge before a board is convened. See 10 ___ U.S.C. 1214. Furthermore, even if we were to conclude that an HIV infection is a "physical disability" because it is a medical condition rendering plaintiff unfit for worldwide duty, we would not conclude that plaintiff is entitled to a medical board hearing. It is a sufficient bar to such a claim that plaintiff offered no proof that he would be entitled to disability benefits. See Candelaria v. United ___ __________ ______ States, 5 Cl. Ct. 266, 273 (1984); see also Abatemarco v. ______ ___ ____ __________ United States, 226 Ct. Cl. 708, 710-11 (1981). A reservist _____________ in plaintiff's position with more than twenty years of service is entitled to disability benefits only if he or she shows that the disability "result[ed] from an injury" and "[wa]s the proximate result of performing active duty or inactive-duty training." 10 U.S.C. 1204. The record in -19- 19 this case is devoid of proof that plaintiff acquired HIV as a result of performing duties in the Guard. III. III. JURISDICTION JURISDICTION ____________ Before drawing this opinion to a close, we address a jurisdictional issue. Defendants Secretary of the Air Force and Chief of the National Guard Bureau (hereinafter the federal defendants) argue that we do not have appellate jurisdiction because plaintiff's request for back pay brings this case within the Tucker Act. See 32 U.S.C. 709 (Guard ___ technicians are federal employees). Analyzing this issue requires an understanding of the Tucker Act and an appreciation of the two types of claims at issue: [1] the 1983 claims for back pay and injunctive relief against the Puerto Rico defendants in their official capacities (e.g., ____ the Adjutant General) based on plaintiff's discharge from PRANG; and [2] the claim for back pay against the federal defendants based on the termination of plaintiff's technician position. Under the Tucker Act, 28 U.S.C. 1491, the United States waived its sovereign immunity from nontort claims for money damages and specified which courts could hear such claims. See United States v. Testan, 424 U.S. 392, 398 ___ ______________ ______ (1976). Claims against the United States exceeding $10,000 ("Big" Tucker Act claims), founded upon the Constitution, a -20- 20 federal statute, a regulation, or contract, are in the jurisdiction of the Court of Federal Claims. 28 U.S.C. 1491. The district courts and the Court of Federal Claims have concurrent jurisdiction over "Little" Tucker Act claims, i.e., for money damages up to $10,000. 28 U.S.C. ____ 1346(a)(2) (Little Tucker Act); Sibley v. Ball, 924 F.2d 25, ______ ____ 28-29 (1st Cir. 1991). The Federal Circuit Court of Appeals has exclusive appellate jurisdiction over appeals from the Court of Federal Claims and over Little Tucker Act cases unrelated to federal taxes. 28 U.S.C. 1295; United States _____________ v. Hohri, 482 U.S. 64, 68, 72-73 (1987); Sibley, 924 F.2d at _____ ______ 29. In Sibley v. Ball, 924 F.2d at 29, we considered ______ ____ whether we had jurisdiction over an action brought against the Secretary of the Navy for back pay, where the complaint sought back pay "within the jurisdiction" of the district court. We held that the case arose under the Little Tucker Act, even though the plaintiff did not cite that Act in his jurisdictional statement. Id. Consequently, we found that ___ the Federal Circuit had exclusive appellate jurisdiction. Id. In this case, plaintiff cited only 28 U.S.C. 1331, the ___ statute providing federal question jurisdiction, as the basis for filing his 1983 claims in the district court. But see ___ ___ Sibley, 924 F.2d at 28 (Section "1331 does not by its own ______ terms waive sovereign immunity and vest in district courts -21- 21 plenary jurisdiction over all, or any, suits which--by seeking a money judgment . . .--are in substance suits against the United States."). The district court clearly had federal question jurisdiction over the Civil Rights Act claims for injunctive relief asserted against the Puerto Rico defendants based on plaintiff's discharge from PRANG.4 28 U.S.C. 1331; 42 U.S.C. 1988. Moreover, we are convinced that the Federal Circuit does not have exclusive appellate jurisdiction here, as it did in Sibley, 924 F.2d at 29, because plaintiff's back ______ pay claim here exceeds the jurisdictional limit for the Little Tucker Act. For the purposes of the Tucker Act, "the amount of a claim against the United States for back pay is the total amount of back pay the plaintiff stands ultimately to recover in the suit and is not the amount of back pay accrued at the time the claim is filed." Smith v. Orr, 855 _____ ___ F.2d 1544, 1553 (Fed. Cir. 1988) (citing cases). At trial, plaintiff did not waive any claim against the United States ____________________ 4. Although the parties have not asked us to examine the effect of the Eleventh Amendment in this context, we note that a district court is not divested of jurisdiction over a case involving a request for reinstatement and back pay simply because the Eleventh Amendment precludes an award of back pay. See Will v. Michigan Dept. of State Police, 491 ___ ____ _______________________________ U.S. 58, 71 n.10 (1989); Barreto-Fred v. Aponte-Roque, 916 ____________ ____________ F.2d 37, 39 (1st Cir. 1990); Melo v. Hafer, 912 F.2d 628, 635 ____ _____ (3d Cir. 1990), aff'd, 112 S. Ct. 358 (1991); see also _____ ___ ____ Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 32 (1st ___________________ _______________ Cir. 1988) (stating that reinstatement is prospective relief). -22- 22 for back pay in excess of $10,000. The record indicates that the amount of back pay allegedly due plaintiff is more than $10,000. Consequently, we have jurisdiction over the injunctive-relief issues on appeal as to the Puerto Rico defendants. But we can identify no basis for district court jurisdiction over the back pay claim against the federal defendants. Neither the Little Tucker Act, nor 28 U.S.C. 1331 provides such authority. Accordingly, we vacate the district court's order with respect to the back pay claim asserted against the federal defendants. We have authority to transfer to another court with jurisdiction any action over which we lack jurisdiction, if such a transfer is in the interests of justice. 28 U.S.C. 1631. Arguably, the Court of Federal Claims has jurisdiction over plaintiff's claim for overdue Guard technician's pay under the Tucker Act and the Back Pay Act, 5 U.S.C. 5596. In Gnagy v. United States, 634 F.2d 574, 580 (Ct. Cl. 1980), _____ _____________ and in Christoffersen v. United States, 230 Ct. Cl. 998, ______________ _____________ 1003-04 (1982), however, the Court of Claims, predecessor to the Court of Federal Claims, held that the Back Pay Act did not provide a basis for a Guard technician, validly discharged from his or her unit, to recover damages against the United States. The court in Gnagy, 634 F.2d at 579, _____ stated: -23- 23 An essential element of the right to recover under the Back Pay Act is that the personnel action which has resulted in loss of pay be "unjustified or unwarranted." This element is absent in the instant case. A prerequisite to plaintiff's former employment as a civilian technician for the National Guard was that he be a member of the National Guard. When he was discharged from [his Guard unit], . . . section 709(e)(1) of 32 U.S.C. (1976) required that his civilian technician employment be terminated. Hence, the termination of this employment was not unjustified or unwarranted. Rather, it was mandated by federal statutory law. The sum effect of this is that the claim in question must be dismissed. Id. (footnotes omitted); accord Christoffersen, 230 Ct. Cl. ___ ______ ______________ at 1001-04; see also Christoffersen, 230 Ct. Cl. at 1005 ___ ____ ______________ (ruling on motion for reconsideration) (panel "denied plaintiffs' claims as not within its jurisdiction"). Gnagy _____ and Christoffersen effectively removed such back pay claims ______________ from the jurisdiction of the Court of Federal Claims because the Tucker Act invests that court with the power to grant relief only when a substantive right to monetary relief exists. See Testan, 424 U.S. at 398, 400; Eastport Steamship ___ ______ __________________ Corp. v. United States, 372 F.2d 1002, 1007-08 (Ct. Cl. _____ ______________ 1967). We can educe from plaintiff's arguments no other basis for federal jurisdiction over the back pay claim relating to his civilian technician job. See Martinez v. ___ ________ United States, 26 Cl. Ct. 1471, 1476 (1992) (court lacks ______________ jurisdiction over due process and equal protection claims -24- 24 based on 42 U.S.C. 1983), aff'd, 11 F.3d 1069 (Fed. Cir. _____ 1993); Montoya v. United States, 22 Cl. Ct. 568, 570 (1991) _______ ______________ (similar); Anderson v. United States, 22 Cl. Ct. 178, 179 n.2 ________ _____________ (1990) ("While this court has jurisdiction in military pay cases seeking reinstatement, back pay and allowances generally, under 28 U.S.C. 1491, it has no jurisdiction over cases arising under the Civil Rights Act."), aff'd, 937 _____ F.2d 623 (Fed. Cir. 1991); Montalvo v. United States, 231 Ct. ________ _____________ Cl. 980, 982-83 (1982) (court lacks jurisdiction over claims based on violations of due process); cf. Dehne v. United ___ _____ ______ States, 970 F.2d 890, 892 (Fed. Cir. 1992) (Court of Federal ______ Claims has jurisdiction over Guard member's claim for overdue military pay, based on statutes stipulating military pay rate and authorizing correction of military records). Because the district court lacked subject matter jurisdiction to entertain plaintiff's back pay claim, we vacate that aspect of the district court's opinion. Moreover, because the Court of Federal Claims, the only tribunal arguably possessed of jurisdiction over such claims against the United States, has expressly held that it lacks subject matter jurisdiction where a civilian technician has been duly discharged from his state Guard unit, a transfer of the claim pursuant to 28 U.S.C. 1631 would be to no avail. The claim is therefore dismissed for want of jurisdiction. -25- 25 In all other respects, we affirm the district court decision on the merits. It is so ordered. It is so ordered. _________________ -26- 26