Abraham **FRIEDMAN**, Plaintiff,

v.

Mickey **KANTOR**, Department of Commerce, International Trade Administration, U.S. International Trade Commission, Department of State, U.S. Trade Representative, Defendants.

Slip Op. 97-112.
Court No. 96–07–01787.

United States Court of
International Trade.

Aug. 11, 1997.

Wasserman, Schneider & Babb (Patrick C. Reed ), New York City, for plaintiff.

Frank W. Hunger, Assistant Attorney General, David W. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis, Assistant Director), and Lyn M. Schlitt, General Counsel, James A. Toupin, Assistant General Counsel, United States International Trade Commission (Gail Usher, Attorney); and Office of Chief Counsel for Import Administration, United States Department of Commerce (David W. Richardson, General Attorney), Office of the Assistant Legal Adviser for Economic, Business, and Communications Affairs, United States Department of State (Keith Loken, Attorney Adviser), and Office of the United States Trade Representative (Kenneth Freiberg, Deputy General Counsel), Washington, DC, of counsel, for defendant.

## OPINION

WALLACH, Judge.

### INTRODUCTION

Plaintiff Abraham Friedman brought this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* (1994), to compel Defendant agencies to assist him with his business difficulties in Mexico. Defendants moved to dismiss the case for lack of subject matter jurisdiction, lack of standing and failure to state a claim upon which relief can be granted. Plaintiff claims jurisdiction is proper under 28 U.S.C. § 1581(i) (1994), but also requests that the case be transferred to a federal district court if this Court determines that it lacks jurisdiction.

Defendant's Motion To Dismiss for lack of jurisdiction is granted because this action does not arise from a law providing for an "embargo" within the meaning of section 1581(i), and, additionally, Plaintiff has failed to satisfy the standing requirement of 28 U.S.C. § 2631(i) (1994) with respect to two of his three claims under the APA. Since these claims are non-justiciable and the agency inaction alleged in the remaining claim appears to be unreviewable, transfer of the case would not be in the interest of justice, and is therefore denied.

### BACKGROUND

Plaintiff commenced this action on May 8, 1996 as a *pro se* plaintiff by filing two Summons and a Complaint, challenging agency inaction.[1] One of the Summons and the Complaint named Mickey Kantor, the Department of Commerce ("Commerce"), the International Trade Administration, the U.S. International Trade Commission, the Department of State, and the U.S. Trade Representative ("USTR") as Defendants (hereinafter "Defendants" or "Defendant agencies"). Defendants responded to the Complaint by moving to dismiss for lack of jurisdiction, lack of standing and failure to state a claim upon which relief can be granted.

This Court appointed counsel to represent Plaintiff on a *pro bono* basis. Plaintiff, by his court-appointed attorney, clarified that the Complaint set forth the following claims: (1) that Commerce did not pursue Plaintiff's petition to impose antidumping duties against imports of shopping carts; (2) that Commerce did not provide trade adjustment assistance to Plaintiff; and (3) that officials of the Commerce and State Departments in Monterrey, Mexico City, and in Washington, D.C., as well as officials of the USTR, declined to help Plaintiff after his business in Mexico encountered difficulties. Plaintiff's Opposition To Defendants' Motion To Dismiss ("Plaintiff's Opposition") at 2.

Plaintiff effectively abandoned the first two claims (antidumping and trade assistance)

---

1. Plaintiff also filed a Motion To Proceed *In Forma Pauperis,* which this Court granted on

Aug. 27, 1996.

raised in the Complaint.[2] Consequently, the only issue before the Court is Plaintiff's contention that he was denied assistance by Defendant agencies in violation of applicable statutes and regulations, which include 15 U.S.C. § 4721(b) (1994), 19 U.S.C. § 2171(c) (1994), and 22 C.F.R. §§ 101.1 and 101.3 (1995) (defining, respectively, functions of the United States and Foreign Commercial Service ("Commercial Service") within Commerce's International Trade Administration, the USTR, and Foreign Service Officers ("FSOs")). Since neither of these statutes or regulations creates a private right of action, Plaintiff relies on the Administrative Procedure Act (APA), which recognizes a private right of action to compel unlawfully withheld agency action.[3] 5 U.S.C. §§ 702, 706. Finally, Plaintiff contends that this action is within the Court's jurisdiction under 28 U.S.C. § 1581(i), but requests that if the Court finds otherwise, it should transfer the case to a federal district court, rather than dismiss it. Plaintiff's Opposition at 4–6.

Mr. Friedman's Affidavit states that Plaintiff is a minority shareholder and corporate General Manager of a company in Monterrey, Mexico, established in the late 1980's to manufacture household steel articles, such as ironing boards, step ladders, and shopping carts. Friedman Affidavit, attached to Plaintiff's Opposition, at ¶ 3. Plaintiff claims the Mexican company was to operate as a *maquiladora* under Mexican law, receiving customs and other benefits, and to use this status to export the merchandise to the United States. *Id.* He states that a U.S. company, to which Plaintiff contributed substantial funds, was to supply raw materials to the Mexican company. *Id.*

Plaintiff further claims that the Mexican operations "encountered a number of serious difficulties and [were] forced to cease operations in 1991, together with the U.S. company." *Id.* at ¶ 4. Those difficulties included the Mexican government's cancellation of the company's *maquiladora* permit and legal proceedings in Mexican courts involving the company's Mexican landlord, which led to the latter's taking possession of the company's equipment and to a personal judgment against Plaintiff. Friedman Affidavit at ¶¶ 4–5. Plaintiff alleges that the government's action was improper and that the court rulings were biased against him and the company as foreign investors. *Id.*

Plaintiff claims that he sought help from the above-named U.S. agencies in connection with the company's *maquiladora* permit and the litigation in Mexican courts, which allegedly continues today. *Id.* at ¶¶ 5–6. However, according to him, little, and nothing effective, was done in response to his request, and this "failure by the responsible government agencies and officials to provide any effective assistance has prevented the business operations in Mexico from reopening." *Id.* at ¶¶ 7–9.

## DISCUSSION

### I

### This Action Is Not Within the Scope of the Court's Residual Jurisdiction

 Plaintiff contends that this Court has subject matter jurisdiction under 28 U.S.C.

---

**2.** Plaintiff conceded that "there is no basis warranted under the law for opposing the motion to dismiss [P]laintiff's claim relating to the request for antidumping relief and [P]laintiff's claim for trade adjustment assistance." Plaintiff's Opposition at 3. The admission seems justified in light of evidence that Plaintiff filed an antidumping petition with Commerce regarding imported shopping carts on January 10, 1991, but withdrew the petition before Commerce or the International Trade Commission took further action. *See Certain Shopping Carts from China and Taiwan: Institution of preliminary antidumping investigations,* 56 Fed.Reg. 1649 (Jan. 16, 1991); Friedman's letter of January 30, 1991, Ex. 2 to Defendants' Motion to Dismiss; *Certain Shopping Carts From China and Taiwan: Notice of withdrawal of petition in anti-dumping investigations,*

56 Fed.Reg. 4852 (Feb. 6, 1991). Thus, there can be no failure on the part of Commerce to pursue an antidumping investigation, and Plaintiff cannot invoke the Court's jurisdiction pursuant to 28 U.S.C. § 1581(c) (1994). Regarding the trade adjustment assistance claim, Plaintiff appears never to have filed a petition pursuant to 19 U.S.C. § 2271 (1994) and therefore there is no determination of the responsible agencies which can be reviewed by this Court under 28 U.S.C. § 1581(d) (1994).

**3.** Plaintiff implicitly concedes that the only relief sought is compelling Defendants to act on his behalf, as the appropriate remedy under the APA, rather than the monetary damages also sought in the Complaint. *See* Plaintiff's Opposition at 7–8.

§ 1581(i).[4] The argument is premised on the assertion that Defendants' failure to help him with his business difficulties in Mexico amounted to an "embargo" or the administration and enforcement of an embargo within the meaning of section 1581(i)(3)-(4). However, the language of section 1581(i) is clear that the Court has jurisdiction only over a civil action that "arises out of any law of the United States providing for ... [an embargo]" or the administration and enforcement of such a law. The present action does not arise out of such a law. On the contrary, Plaintiff alleges a cause of action under the APA[5] and statutes or regulations defining, respectively, the functions of the Commercial Service, the USTR, and the Foreign Service. These provisions may implicate certain international trade issues, but neither of them is a law providing for an embargo or for other import regulation, as specified in section 1581(i). Thus, while section 1581(i) was "intended to give the Court of International Trade broad residual authority over civil actions arising out of federal statutes governing import transactions," *Conoco, Inc. v. United States Foreign–Trade Zones Bd.*, 18 F.3d 1581, 1588 (Fed.Cir.1994), it cannot confer jurisdiction in the absence of such a statute merely because the action involves issues of international trade. *See Phibro Energy, Inc.*

4. Section 1581(i), the Court's residual jurisdiction, provides in pertinent part:

In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
(1) revenue from imports or tonnage;
(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
(4) administration and enforcement with respect to matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

5. This Court has also held that the APA does not afford an independent basis for subject matter

*v. Franklin*, 17 CIT 383, 822 F.Supp. 759 (1993).

Plaintiff contends that the inaction of Defendant agencies completely prevented his company from importing in the United States and therefore amounted to an embargo within the meaning of *K Mart Corp. v. Cartier*, which defined the term as "a governmentally imposed quantitative restriction—of zero—on the importation of merchandise." 485 U.S. 176, 185, 108 S.Ct. 950, 957, 99 L.Ed.2d 151 (1988). However, *K Mart* addressed the issue of whether the prohibition of certain imports contained in a *U.S. law*—section 526(a) of the 1930 Tariff Act, 19 U.S.C. § 1526(a)—constituted an embargo.[6] Thus, nothing in this case supports the proposition that the failure of U.S. agencies to assist a foreign company seeking to import merchandise in the United States is somehow equivalent to a U.S. law providing for an embargo or the administration and enforcement of such a law.[7]

On the contrary, *K Mart* stands for the proposition that section 1581(i), while intended to remedy the problem of overlapping jurisdictions between the Court of International Trade and district courts, is a relatively narrow grant of jurisdiction. The Supreme Court stated:

jurisdiction permitting judicial review of agency action. *Cherry Lane Fashion Group, Inc. v. United States*, 13 CIT 291, 296, 712 F.Supp. 190, 194 (1989), *aff'd*, 8 Fed. Cir. (T) 187, 897 F.2d 539 (1990).

6. In doing so the Court also noted that "not every governmental importation prohibition is an embargo [within the meaning 28 U.S.C. § 1581(i)]." 485 U.S. at 187, 108 S.Ct. at 958.

7. Plaintiff also relies on *American Ass'n of Exporters and Importers–Textile and Apparel Group v. United States*, 3 Fed. Cir. (T) 58, 751 F.2d 1239 (1985) ("*AAEI–TAG*"). However, in *AAEI–TAG* the Federal Circuit decided that the Court of International Trade had jurisdiction under section 1581(i) because plaintiff objected to the "administration and enforcement of the quotas established under the authority of section 204," which is "a law providing for quantitative restrictions on textiles." 3 Fed. Cir. (T) at 64, 751 F.2d at 1244. Again, there is no law providing for an embargo or quantitative restrictions on imports on which the Court's jurisdiction could be predicated in this case.

Congress did not commit to the Court of International Trade's exclusive jurisdiction **every** suit against the Government challenging customs-related laws and regulations. Had Congress wished to do so it could have expressed such an intent much more clearly and simply by, for example, conveying to the specialized court "exclusive jurisdiction ... over all civil actions against the [Government] directly affecting imports," ... or over "all civil actions against the [Government] which arise directly from import transactions...."

485 U.S. at 188, 108 S.Ct. at 958 (citations omitted) (emphasis in original). Thus, in light of the statute's unambiguous language and Congress' manifest intent in rejecting different formulations of the Court's residual jurisdiction, this action clearly falls out of the purview of section 1581(i).

Furthermore, courts have repeatedly held that "the terms of [the Government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941). *See also Halperin Shipping Co., Inc. v. United States,* 14 CIT 438, 443, 742 F.Supp. 1163, 1168 (1990) ("Considerations of sovereign immunity mandate that the United States only be subject to suit when the statutorily defined terms of its consent have been duly met."). Thus, the Court must adhere strictly to the language contained in section 1581(i), and cannot assume jurisdiction over this case.

## II

### Plaintiff Additionally Lacks Standing with Respect to Two of His Claims

An alternative ground for dismissal for lack of jurisdiction is that Plaintiff lacks standing to bring his claims under 15 U.S.C. § 4721(b) and 19 U.S.C. § 2171(c), the Commercial Service and USTR provisions. Had subject matter jurisdiction been proper under section 1581(i), Plaintiff would still have to meet the standing requirement of 28 U.S.C. § 2631(i) in order to be heard on the merits. Section 2631(i), which incorporates by reference section 10(a) of the APA, 5 U.S.C. § 702 [8], provides:

Any civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsection (a)–(h) of this section, may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5.

The Supreme Court has consistently held section 702's "adversely affected or aggrieved" formulation to permit review only in cases brought by a person whose putative injuries are " 'within the zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis of his complaint." *Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990). *See also Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 396–400, 107 S.Ct. 750, 754–57, 93 L.Ed.2d 757 (1987).

The "zone of interests" test is applicable to all legislation unless it is expressly negated by Congress, and its breadth varies according to the provisions of law at issue. *Bennett v. Spear,* —— U.S. ——, ——, 117 S.Ct. 1154, 1161–62, 137 L.Ed.2d 281 (1997). "[It] is a non-constitutional prudential limitation on a court's exercise of jurisdiction in contrast to the mandatory Article III requirements that a would-be litigant demonstrate that it has suffered an actual injury which can be fairly traced to the challenged action and which is likely to be redressed by a favorable decision." *Florsheim Shoe Co. v. United States,* 2 Fed. Cir. (T) 83, 87 n. 4, 744 F.2d 787, 790 n. 4 (1984). Thus, Plaintiff must allege facts sufficient to place him within the zone of interests protected by the statutes and regulations he relies on in order to have standing to sue.

### A

### Plaintiff Is Not within the Zone of Interests Protected by 15 U.S.C. § 4721(b) and 19 U.S.C. § 2171(c)

In this case Plaintiff has failed to show that his claim is within the zone of

---

8. 5 U.S.C. § 702 provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

interests protected by 15 U.S.C. § 4721(b).[9] This provision, enacted by section 2301(b) of the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1338, is part of Title II of the Act, referred to as the Export Enhancement Act of 1988. Accordingly, it expresses Congress' intent to promote U.S. exports, specifically listing services that the Commercial Service should provide to U.S. exporters.

Plaintiff argues that section 4721(b) includes language to the effect that the Commercial Service's mission is not only the promotion of U.S. exports, but generally "protecting the interests of U.S. businesses abroad." Plaintiff's Reply at 3. However, all directives as to how the Commercial Service should protect U.S. business interests abroad (except paragraph (7), which does not mention aid to private business at all), refer only to "United States exporters." In particular, paragraph (6) authorizes the Commercial Service to assist United States *exporters* in their dealings with foreign governments.

The term "United States exporter" is defined by the statute as an entity (including a U.S.-owned foreign corporation) "that exports, or seeks to export, goods or services produced in the United States." 15 U.S.C. § 4721(j)(3). In contrast, Plaintiff declares that his "business, if operational, would be engaged in production of goods for importation into the United States." Plaintiff's Opposition at 4. Thus, Plaintiff, as a potential importer to the United States, is clearly not within the zone of interests protected by section 4721(b).

Plaintiff modified his claim in response to Defendants' contention that he is not within the zone of interest protected by the Export Enhancement Act. He argues that even if this zone is limited to U.S. exporters, it still covers his injury, because the Mexican company was to be supplied with raw materials exported by Mr. Friedman's U.S. company.

Plaintiff's Reply at 3. However, the argument is without merit because Plaintiff has never alleged that he sought assistance from Defendant agencies for the U.S. company, which potentially qualifies as an exporter under the statute, but only for the Mexican company, which Plaintiff himself describes as an importer. In sum, only U.S. exporters fall within the zone of interests protected by section 4721(b), and Plaintiff lacks standing for his claim that he was denied assistance in violation of this provision.

■ Plaintiff has similarly failed to establish that he was "adversely affected or aggrieved" within the meaning of 19 U.S.C. § 2171(c)(1)(A). Section 2171(c)(1)(A), added by the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, Title I, § 1601, 102 Stat. 1260, gives the United States Trade Representative "the primary responsibility for developing, and for coordinating the implementation of, United States international trade policy. . . ." This broad grant of authority cannot be construed as intended for the protection of private parties, much less as imposing a duty on the USTR to act on behalf of persons engaged in importing into the United States.

In brief, the interests asserted in Plaintiff's claims under 19 U.S.C. § 2171(c) and 15 U.S.C. § 4721(b) are "so marginally related to or inconsistent with the purposes implicit in the statute[s] that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke*, 479 U.S. at 399, 107 S.Ct. at 757. Thus, in addition to lacking subject matter jurisdiction, the Court cannot entertain jurisdiction over these claims because Plaintiff lacks standing to present them.

## B

### Plaintiff Has Standing for His Claim under 22 C.F.R. §§ 101.1 and 101.3

■ With respect to his claim that FSOs refused to help him in violation of 22 C.F.R.

---

**9.** 15 U.S.C. § 4721(b), as amended, provides in relevant part:

The Commercial Service shall place primary emphasis on the promotion of exports of goods and services from the United States, particularly by small businesses and medium-sized businesses, and on the protection of United States business interests abroad by carrying out activities such as—

\* \* \* \* \* \*

(6) assisting United State exporters in their dealings with foreign governments and enterprises owned by foreign governments. . . .

§§ 101.1 and 101.3,[10] Plaintiff has alleged sufficient facts to meet section 2631(i)'s prudential standing requirement. The zone of interests protected by these regulations, and specifically section 101.3(b), appears to encompass Plaintiff as an American citizen involved in foreign trade. In arguing that Plaintiff lacks standing, Defendants fail to deal with the Foreign Service regulations claim, apparently because section 702 of the APA speaks of "adversely affected or aggrieved by agency action within the meaning of a relevant *statute.*" *See* Defendants' Reply at 8–10. Since regulations are necessarily promulgated under the authority of a statute, in this case the Foreign Service Act of 1946[11], Plaintiff could be "adversely affected or aggrieved" within its meaning.[12] However, even if Plaintiff had satisfied the standing requirement, this Court would still not possess jurisdiction over claims arising out of the Foreign Service Act or regulations promulgated under its authority.

## III

## Transfer of the Case to a Federal District Court Is Not Appropriate

■ Plaintiff requests that if this Court lacks jurisdiction, it should transfer the case to the U.S. District Court for the Eastern District of New York. Plaintiff's Opposition at 6. 28 U.S.C. § 1631 (1994) provides that "[w]henever a ... [federal] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed...." [13]

If this action were brought in the district court under the APA, the six-year limitation period of 28 U.S.C. § 2401(a) (1994) would apply. Plaintiff alleges that he requested and was denied assistance by Defendant agencies some time in 1991 when the Mexican company went out of business. *See* Friedman Affidavit at ¶¶ 4–8. Thus, depending on when the above events took place, the six-year limitation period may have expired between May 8, 1996, when this action was commenced, and the present time.[14] If this

---

**10.** Section 101.1 provides in relevant part:

> Officers of the Foreign Service shall protect the rights and interests of the United States in its international agricultural, commercial, and financial relations. In pursuance of this duty, they shall:
> (a) Guard against the infringement of rights of American citizens in matters relating to commerce and navigation which are based on custom, international law, or treaty.
>
> Section 101.3 provides in relevant part:
> Officers of the Foreign Service shall perform the following-enumerated services for American citizens and business organizations in connection with the conduct of foreign trade ...
>
> \* \* \* \* \* \*
>
> (b) Lending direct assistance to American citizens and business firms.

**11.** Sections 101.1 and 101.3, part of Subchapter K, "Economic, Commercial and Civil Aviation Functions," of the Foreign Service regulations were promulgated under authority of section 302 of the Foreign Service Act of 1946, 60 Stat. 1001–1002, codified as 22 U.S.C. § 842. The Act was repealed by the Foreign Service Act of 1980, Pub.L. No. 96–465, § 2205(1), 94 Stat. 2159, as part of a general revision of the laws relating to the administration of the Foreign Service. However, a savings provision, section 2401, 94 Stat. 2168, codified as 22 U.S.C. § 4172, provides *inter alia* that all regulations issued under authority of the Foreign Service Act of 1946 "shall

continue in full force and effect until modified, revoked, or superseded by appropriate authority."

**12.** *See, e.g., Capital Legal Found. v. Commodity Credit Corp.,* 711 F.2d 253, 258–59 (D.C.Cir. 1983) (the court dealt with an APA claim that an agency had violated applicable regulations, stating that "the 'zone' test is passed if a plaintiff's interest in the agency action appears to fall within the ambit of the constitutional clause, statute or *regulation* allegedly violated."); *Webster v. Doe,* 486 U.S. 592, 602 n. 7, 108 S.Ct. 2047, 2053 n. 7, 100 L.Ed.2d 632 (1988) (citing authority for the proposition that an agency's failure to follow its own regulations can be challenged under the APA as a violation of the relevant statute).

**13.** Circuit courts have held that a court must, upon finding that it lack jurisdiction, consider if transfer of the action to a court that has jurisdiction would be "in the interest of justice," even if the parties have not raised the issue. *See Hays v. Postmaster General,* 868 F.2d 328, 331 (9th Cir. 1989); *Ingersoll–Rand Co. v. United States,* 780 F.2d 74, 81 (D.C.Cir.1985).

**14.** This also raises a question whether Plaintiff's claim would have been barred by 28 U.S.C. § 2636(i), which provides that any cause of action brought under 28 U.S.C. § 1581(i) must be brought within two years of the date that the cause of action accrues.

is the case, dismissal will deprive Plaintiff of forum, and, absent other considerations, transfer might be in the interest of justice.

However, transfer is not warranted under section 1631 if the district court would also lack jurisdiction over an action. As shown above, Plaintiff lacks standing under section 702 of the APA with respect to two of his claims. Therefore the bar of non-justiciability will prevent any federal court from assuming jurisdiction over these claims. The Supreme Court has held that section 1631 "confers on [a federal court] authority to make a single decision upon concluding that it lacks jurisdiction—whether to dismiss the case or 'in the interest of justice,' to transfer it to a [court] that has jurisdiction." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988). Accordingly, the statute would not authorize transfer to a court that would similarly lack jurisdiction. As the Ninth Circuit held, "transfer is improper where the transferee court lacks jurisdiction and thus could not have originally heard the suit." *Clark v. Busey*, 959 F.2d 808, 812 (9th Cir.1992). *See also Charles v. Rice*, 28 F.3d 1312, 1322 (1st Cir.1994); *Earnest v. United States*, 33 Fed. Cl. 341, 344 (1995). Therefore, Plaintiff's claims under 19 U.S.C. § 2171(c) and 15 U.S.C. § 4721(b) are not transferable and must be dismissed.

■■■ With respect to Plaintiff's claim under 22 C.F.R. §§ 101.1 and 101.3, transfer would not be in the interest of justice. While the District Court may arguably possess jurisdiction over this claim, actions of the FSOs under the regulations in question appear to be unreviewable [15], in which case Plaintiff is not entitled to relief. The Federal Circuit has held that transfer of a case where the petitioner has failed to make a *prima facie* showing of a right to relief would not be in

the interest of justice. *Ferris v. Dep't of the Navy*, 810 F.2d 1121, 1123 (Fed.Cir.1987).

In *Campbell v. Office of Personnel Management*, the Third Circuit held that transfer would not be in the interest of justice because no court would have had the power to review the challenged determination, and because, even if the determination had been reviewable, the petitioner could not have prevailed on the facts presented. 694 F.2d 305, 309 n. 6 (3d Cir.1982). Thus, transfer "should not take place if the action most probably would be dismissed in the District Court. The court should not countenance the performance of a futile act if it only produces a drain on party and judicial economy and time." *Singleton v. United States*, 6 Cl.Ct. 156, 168 (1984).

Judicial review is precluded by section 10 of the APA, 5 U.S.C. § 701(a)(2), in cases where "agency action is committed to agency discretion by law." The Supreme Court has held that agency action is unreviewable under section 701(a)(2) "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). In this case, the relevant statute, 22 U.S.C. § 842, merely authorizes the Secretary of State to prescribe regulations regarding the duties, functions and obligations of FSOs. The regulations themselves do not provide any standards as to the circumstances and manner in which FSOs should assist American citizens abroad. Consequently, there are no judicially manageable standards against which to judge the agency's alleged refusal to assist Mr. Friedman.[16]

In addition, the Foreign Service is the country's professional diplomatic corps, de-

---

**15.** As stated by the Supreme Court, the APA's judicial review provisions are not "jurisdictional," but rather raise a question of "[w]hether a cause of action exists." *Air Courier Conference of America v. American Postal Workers Union*, 498 U.S. 517, 523, n. 3, 111 S.Ct. 913, 917 n. 3, 112 L.Ed.2d 1125 (1991).

**16.** In *Local 2855, AFGE v. United States*, the Third Circuit stated that "[t]he existence of broad discretionary power in an agency often suggests

that the challenged decision is a product of political, military, economic or managerial choices that are not really susceptible to judicial review." 602 F.2d 574, 579 (3rd Cir.1979). The Court found agency action unreviewable since the statutory scheme similarly gave broad authority to the head of the agency to prescribe regulations and the regulations likewise failed to provide any meaningful criteria against which to judge the agency's exercise of discretion. *Id.* at 580–82.

clared by statute to be "essential in the national interest to assist the President and the Secretary of State in conducting the foreign affairs of the United States." 22 U.S.C. § 3901(a)(1). Thus, the duties of the Foreign Service involve a foreign affairs function of the Executive Branch, which has been traditionally shielded from judicial review. *See, e.g., Jensen v. Nat'l Marine Fisheries Serv.,* 512 F.2d 1189, 1191 (9th Cir.1975).

In brief, the challenged refusal of the Foreign Service to assist Plaintiff is unreviewable under the APA. Transfer of Plaintiff's Foreign Service regulations claim would therefore be futile and is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is granted, and the case is dismissed in whole for lack of jurisdiction. Transfer to a federal district court is denied.

## JUDGMENT

This case having come before the Court for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED AND DECREED: that Defendant's Motion to Dismiss is granted; and it is further

ORDERED, ADJUDGED AND DECREED: that Plaintiff's Motion to Transfer the case is denied. Accordingly, pursuant to USCIT Rule 12(b)(1), this action is dismissed, and final judgment is entered in favor of Defendants, Mickey Kantor *et al.* and against Plaintiff, Abraham Friedman.