Slip Op. 07-31

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                         :
SALMON SPAWNING & RECOVERY               :
ALLIANCE, *et al.*,                      :
                                         :
           Plaintiffs,                   :
                                         :
                                         :       Before: Judith M. Barzilay, Judge
        v.                               :       Court No. 06-00191
                                         :
W. RALPH BASHAM, *et al.*,               :
                                         :
           Defendants.                   :
                                         :
_____:

**OPINION**

[Defendants' motion to dismiss is granted.]

Dated: March 6, 2007

*Heller Ehrmann LLP*, (*Eric Redman*) and (*Svend Arnold Brandt-Erichsen*) for Plaintiffs Salmon Spawning & Recovery Alliance, Native Fish Society, and Clark-Skamania Flyfishers.

*Peter D. Keisler*, Assistant Attorney General; (*Jeanne E. Davidson*), Director; (*Stephen C. Tosini*), Commercial Litigation Branch, Civil Division, United States Department of Justice for Defendants United States Customs & Border Protection, Dirk Kempthorne, United States Department of Interior, United States Fish & Wildlife Service, Carlos M. Gutierrez, United States Department of Commerce, D. Robert Lohn, National Oceanic & Atmospheric Administration National Marine Fisheries Service, Deborah J. Spero, and H. Dale Hall.

**BARZILAY, JUDGE:** Plaintiffs Salmon Spawning & Recovery Alliance, Native Fish

Society, and Clark-Skamania Flyfishers (collectively "Plaintiffs") have moved for judgment on

the agency record, pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 (2000), *et*

*seq.*, the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551–706 (2000), and USCIT Rule

56.1, to challenge Defendants'[1] failure to perform ESA-mandated duties in connection with the importation of threatened and endangered[2] salmon from Canada into the United States. Specifically, Plaintiffs aver 1) that Defendants have violated section 9 of the ESA ("§ 9"), 16 U.S.C. § 1538, and the APA by allowing the prohibited importation of these salmon and 2) that Customs and the FWS have unlawfully failed to consult with the NMFS, as required by section 7 of the ESA ("§ 7"), *Id.* § 1536, to discern whether their non-enforcement of § 9 jeopardizes the endangered salmon. *See* Compl. ¶¶ 41–46, 48–51. Plaintiffs ask this court 1) to declare that these actions violate the ESA and APA, 2) to enter injunctive relief to enforce Defendants' compliance with the law, and 3) to award Plaintiffs costs for this action. *See* Compl. 12. Defendants have moved to dismiss the case for lack of subject matter jurisdiction pursuant to USCIT Rule 12(b)(1) or, in the alternative, for failure to state a claim for which relief can be granted pursuant to USCIT Rule 12(b)(5). For the reasons set forth below, Defendants' motion to dismiss for lack of subject matter jurisdiction is granted.

## I. Background

### A. The Endangered Species Act

In 1973, Congress passed the Endangered Species Act and established a legal regime designed "to halt and reverse the trend toward species extinction." *Earth Island Inst. v.*

---

[1]Defendants include U.S. Customs and Border Protection ("Customs"), the U.S. Department of the Interior, the U.S. Fish & Wildlife Service ("FWS"), the U.S. Department of Commerce ("Commerce"), the heads of the aforementioned agencies, the National Oceanic and Atmospheric Administration, and the National Marine Fisheries Service ("NMFS").

[2]To avoid the tiresome refrain "threatened and endangered," the word "endangered" in this opinion will be assumed to encompass the meaning of "threatened" unless context suggests otherwise.

*Christopher*, 19 CIT 1461, 1480, 913 F. Supp. 559, 576 (1995) (quoting *TVA v. Hill*, 437 U.S. 153, 184–85 (1978)), *appeal dismissed*, 86 F.3d 1178 (Fed. Cir. 1996). From the bill's drafting onward, "[t]he dominant theme pervading all Congressional discussion of the [ESA] was the overriding need *to devote whatever effort and resources were necessary* to avoid further diminution of national and worldwide wildlife resources." *TVA*, 437 U.S. at 177 (quotations & citation omitted). It became the "declared . . . policy of Congress that all Federal departments and agencies shall seek to conserve[3] endangered species and threatened species and shall utilize their authorities in furtherance of" this purpose. 16 U.S.C. § 1531(c).

Under section 4 of the Act, the Secretary of Commerce or the Interior, whoever is appropriate,[4] must promulgate regulations that list species considered "threatened" or "endangered" and that designate these species' "critical habitat." *Id.* § 1533(a). The Secretary must also "issue such regulations as he deems necessary and advisable to provide for the conservation of such species." § 1533(d). In conjunction with these efforts, § 7 requires every federal agency, "in consultation with and with the assistance of the Secretary," to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction

---

[3]Congress defined "conserve" as "to use and the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." 16 U.S.C. § 1532(3).

[4]The ESA delegates the responsibility for determining whether a species is endangered or threatened to the Secretaries of the Interior and Commerce. *See* 16 U.S.C. §§ 1532(15), 1533(a). The Secretary of the Interior administers the ESA through the FWS, while the Secretary of Commerce does so via the NMFS. Because the Secretary of Commerce and NMFS oversee marine life, they have responsibility for the salmon in this case. This opinion will therefore refer only to Commerce and the NMFS.

or adverse modification of habitat of such species which is determined by the Secretary . . . to be critical." § 1536(a)(2); *accord* § 1536(a)(1); 50 C.F.R. § 402.14(a).  This provision in effect "'*prohibit*[*s*] [a] federal agency from taking action which does jeopardize the status of endangered species.'"  *TVA*, 437 U.S. at 179 (quoting *Endangered Species Act of 1973: Hearing on S. 1592 and S. 1983 Before the Subcomm. on Env't of the Comm. on Commerce*, 93d Cong. 68 (1973)) (second brackets in original).

In addition, the ESA employs other mechanisms to protect endangered species.  For example, § 9 renders it "unlawful for any person subject to the jurisdiction of the United States to – (A) import any [endangered] species into . . . the United States," § 1538(a)(1), and section 11 of the ESA contains the citizen suit provision under which Plaintiffs have brought their case, *see id.* § 1540(g).[5]

### B. Salmon Under the ESA

In response to more than a century of over-fishing and environmental abuse, the NMFS has listed twenty-six populations of West Coast salmon and steelhead as threatened or endangered.[6]  50 C.F.R. §§ 223.102 (listing threatened salmon species), 224.101 (listing

---

[5]This portion of the ESA's citizen suit provision declares in relevant part that:
[A]ny person may commence a civil suit on his own behalf--
(A) to enjoin any person, including the United States and any other governmental instrumentality or agency . . . , who is alleged to be in violation of any provision of [the ESA] or regulation issued under the authority thereof . . . .
. . . .
The district courts shall have jurisdiction . . . to enforce any such provision or regulation . . . .
16 U.S.C. § 1540(g)(1).

[6]This case concerns Chinook salmon from Puget Sound and the lower Columbia River, and Snake River Fall Chinook.

endangered salmon species); *see also id.* § 223.203(a) ("The prohibitions of section 9(a)(1) of the ESA (16 U.S.C. [§] 1538(a)(1)) relating to endangered species apply to anadromous fish with an intact adipose fin that are part of the threatened species of salmonids listed in [50 C.F.R.] § 223.102(a)."); *Endangered and Threatened Species; Final Rule Governing Take of 14 Threatened Salmon and Steelhead Evolutionarily Significant Units (ESUs)*, 65 Fed. Reg. 42,422, 42,423 (Dep't Commerce July 10, 2000) (finding by NMFS that it is "necessary and advisable" to ban imports of threatened salmon); *Policy on Applying the Definition of Species Under the Endangered Species Act to Pacific Salmon*, 56 Fed. Reg. 58,612 (Dep't Commerce Nov. 20, 1991). Because of the dire circumstances facing many species, the NMFS has extended ESA protection even to certain hatchery-raised salmon to help the populations survive. *See* § 223.203(a); *Policy on the Consideration of Hatchery-Origin Fish in Endangered Species Act Listing Determinations for Pacific Salmon and Steelhead*, 70 Fed. Reg. 37,204-01 (Dep't Commerce June 28, 2005). Customs has likewise adopted regulations that comply with the NMFS' findings. 19 C.F.R. § 12.26(g)(1).[7]

---

[7]The regulation in relevant part states that:
(1) All import shipments of fish and wildlife subject to the regulations or permit requirements of the U.S. Fish and Wildlife Service, published pursuant to the Endangered Species Act of 1973, 16 U.S.C. 1531, or other statutory authority, shall be subject to examination or inspection by that agency's officer serving the port of entry, for determination as to permissible release or such other disposition as he may direct. Customs officers performing examinations of such fish and wildlife in accordance with regulations of the U.S. Fish and Wildlife Service in 50 CFR part 10 and parts 13 through 17, shall release shipments only upon submission by the importer of evidence sufficient to establish compliance with those regulations, any applicable permit requirements, and compliance with applicable identification and package or container marking requirements as specified by 50 CFR 17.6(a) and 17.9. In case of doubt as to whether fish, birds, or other wildlife belong to prohibited or endangered species or subspecies or whether an entry permit is required, or in case of suspicion on the part of officers

Some salmon species listed as endangered swim north from the United States into Canadian waters, where often many are killed for sport or commercial purposes before they can return to U.S. rivers to spawn, *i.e.*, before they can reproduce for the only time in their lives. Commercial shippers[8] and American sport fishermen often import these dead salmon into the United States. In fact, in Canada an entire industry markets to U.S. sport fishermen the opportunity to hunt these protected salmon. *See* Pls.' Mot. J. A.R. Ex. 1, 2–3 ("Pls. Mot.").

**C. The Case at Bar**

In response to Defendants' failure to enforce the importation prohibition on these endangered salmon, pursuant to the ESA's citizen suit provision, Plaintiffs compiled documents detailing the killing of the endangered salmon in Canadian waters and their subsequent importation, and submitted them to Defendants. *See* Pls. Mot. Ex. 1. Defendants responded with a one-page letter, which stated that Customs would forward the documents to the NMFS. *See* Pls. Mot. Ex. 2. Plaintiffs then filed suit in the Western District of Washington pursuant to § 1540(g)(1). That court held that it lacked subject matter jurisdiction over the case and

---

of the [sic] Customs that the species sought to be entered are prohibited or endangered species or subspecies imported under other names or descriptions, the importation shall be refused Customs release, and the importer shall be responsible for concluding arrangements acceptable to the regional director or other agent of the U.S. Fish and Wildlife Service for proper handling, custody, and care, at the importer's expense and risk, of the unreleased fish, birds, or other wildlife. . . .

19 C.F.R. § 12.26(g)(1).

[8]The ESA prohibits commercial use of threatened and endangered species. 16 U.S.C. § 1538(a)(1)(E)–(F).

transferred the complaint to the Court of International Trade. *See Salmon Spawning & Recovery Alliance v. Spero*, No. C05-1878Z, 2006 WL 1207909 (W.D. Wash. May 3, 2006); *see also* 28 U.S.C. § 1631 (2000) (providing for transfer for want of jurisdiction).

## II. Defendants' Motion to Dismiss

Subject matter jurisdiction constitutes a "threshold matter" in all cases, such that without it, a case must be dismissed without proceeding to the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). "The burden of establishing jurisdiction lies with the party seeking to invoke th[e] Court's jurisdiction." *Bhullar v. United States*, 27 CIT 532, 535, 259 F. Supp. 2d 1332, 1334 (2003) (citing *Old Republic Ins. Co. v. United States*, 14 CIT 377, 379, 741 F. Supp. 1570, 1573 (1990) (citing *McNutt v. GM Acceptance Corp.*, 298 U.S. 178, 189 (1936))), *aff'd*, 93 F. App'x 218 (Fed. Cir. 2004).

### A. Standard of Review

An analysis of whether a Court has subject matter jurisdiction "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Bennett v. Spear*, 520 U.S. 154, 161 (1997) (quotations & citation omitted). In its constitutional aspect, a plaintiff must satisfy the "'case' or 'controversy' requirement of Article III," which requires that the "plaintiff . . . demonstrate [1] that he has suffered [an] 'injury in fact' [2] . . . 'fairly traceable' to the actions of the defendant, and [3] that the injury will likely be redressed by a favorable decision."[9] *Id.* (citations omitted). When examining these factors, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to

---

[9]Because the court finds that Plaintiffs do not meet the 'case' or 'controversy' requirement, it need not discuss other constitutional limitations on subject matter jurisdiction.

dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Earth Island Inst.*, 19 CIT at 1465, 913 F. Supp. at 564 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "[T]he material allegations of a complaint are taken as admitted and are to be liberally construed in favor of the plaintiff(s)." *Humane Soc'y v. Brown*, 19 CIT 1104, 1104, 901 F. Supp. 338, 340 (1995). However,

> [w]hen the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) . . . to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or foregone action) at issue. . . . When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed."

*Lujan*, 504 U.S. at 561–62.

## B. Discussion

Assuming *arguendo* that Plaintiffs have suffered an injury in-fact fairly traceable to Defendants, the court will proceed to examine whether either of Plaintiffs' § 9 or § 7 claims may be redressed by a favorable decision in this Court.

### 1. Section 9

The discretionary nature of Customs' exercise of its enforcement powers renders this Court incapable of redressing Plaintiffs' § 9 claim. While at first glance § 1540(g)(1)[10] may grant

---

[10]
[A]ny person may commence a civil suit on his own behalf–
(A) to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof; or (B) to compel the Secretary to apply, pursuant to section 1535(g)(2)(B)(ii) of this title, the prohibitions set forth in or authorized pursuant to section 1533(d) or 1538(a)(1)(B) of this title with respect to the taking of any resident endangered species or threatened species within any State; or (C) against the Secretary where there is alleged a failure of the

Plaintiffs a cause of action against Customs' failure to enforce the § 9 ban on the importation of endangered salmon, which already is codified in 50 C.F.R. § 223.203(a) and 19 C.F.R. § 12.26(g), the crux of the inquiry is found in the words of the statute "which is not discretionary with the Secretary." Case law and constitutional concerns place Plaintiffs' claims squarely in the category of discretionary acts and duties. Therefore, this court may not require such actions on the part of the NMFS or the Bureau of Customs.[11]

In its role as an administrative agency, Customs has "plenary power to safeguard the United States borders, which includes the power to inspect any person or thing that presents itself at a border seeking entrance." *United States v. 1903 Obscene Magazines*, 907 F.2d 1338, 1341 (2d Cir. 1990). 19 U.S.C. § 1581(a) (2000) establishes Customs officers' authority to search individuals and items crossing the border:

> Any officer of the customs [sic] *may* at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters . . . or at any other authorized place . . . and examine the manifest and other documents and

---

Secretary to perform any act or duty under section 1533 of this title which *is not discretionary* with the Secretary.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce any such provision or regulation, or to order the Secretary to perform such act or duty, as the case may be. In any civil suit commenced under subparagraph (B) the district court shall compel the Secretary to apply the prohibition sought if the court finds that the allegation that an emergency exists is supported by substantial evidence.

16 U.S.C. § 1540(g)(1) (emphasis added).

[11]At oral argument, Plaintiffs' counsel seemed to abandon the claim that Defendants were violating § 9 and stated that, for now, an order from this court remanding to the agencies for a § 7 consultation would satisfy Plaintiffs. *See* Tr. 25–26. However, as Defendants' counsel noted, if Defendants are given complete discretion to enforce, the results of a § 7 consultation would lead nowhere. *See* Tr. 33. More importantly, the court finds that there is no agency action that would trigger the consultation requirement. *See infra.*

papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end *may* hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

19 U.S.C. § 1581(a) (emphasis added). As the statute reveals, the exercise of Customs' police powers lie solely within the agency's discretion. The statutory language repeatedly employs the word "may," which reflects the discretionary nature of law enforcement, a governmental function traditionally left to the Executive branch. *Accord Mid-S. Holding Co. v. United States*, 225 F.3d 1201, 1205 (2000) (noting that § 1581 "leaves the Customs Service a great deal of discretion . . . in deciding which vessels to board and search"); *see also Autery v. United States*, 992 F.2d 1523, 1529 (11th Cir.1993) (observing that unspecific statutory or regulatory guideline implies that discretion was intended). The law does not require Customs officials to stop and examine every vehicle, vessel, individual, or piece of merchandise that passes into the United States. *See Carroll v. United States*, 267 U.S. 132, 154 (1925) ("Travelers *may* be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which *may* be lawfully brought in.") (emphasis added); *cf. Alexander v. United States*, 362 F.2d 379, 381–82 (9th Cir. 1966) (discussing routine occurrence of Customs officials not conducting search at border). In fact, to do so would prove absurd. A mandatory full and thorough search of all vehicles and individuals entering the United States not only would exhaust Customs' limited resources, but would bring international travel, trade, and commerce to a virtual halt.

The Supreme Court has long held that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's *absolute* discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *accord Sierra Club v.*

*Whitman*, 268 F.3d 898, 902, 903 (9th Cir. 2001); *Strahan v. Linnon*, 967 F. Supp. 581, 604 (D.

Mass. 1997), *aff'd*, 187 F.3d 623 (1st Cir. 1998); *see also Lujan*, 504 U.S. at 568 ("[S]uits

challenging, not specifically identifiable Government violations of law, but the particular

programs agencies establish to carry out their legal obligations . . . [are] . . . rarely if ever

appropriate for federal-court adjudication.'") (quoting *Allen v. Wright*, 468 U.S. 737, 759–60

(1984)) (first ellipses & second brackets in original); *cf. Hinck v. United States*, 446 F.3d 1307,

1315 (Fed. Cir. 2006).  These types of executive government action are "general[ly] unsuitab[le]

for judicial review," since "an agency decision not to enforce often involves a complicated

balancing of a number of factors which are peculiarly within its expertise."  *Heckler*, 470 U.S. at

831; *accord Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mutual Auto. Ins. Co.*, 463

U.S. 29, 42 (1983); *Sierra Club*, 268 F.3d at 903; *Dubois v. Thomas*, 820 F.2d 943, 948 (8th Cir.

1987) ("Only if the Administrator has discretion to allocate its own resources can a rational

enforcement approach be achieved."); *see Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760

(2005); *Lujan*, 504 U.S. at 577; *cf. Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004)

("[T]he only agency action that can be compelled under the APA is action legally *required*.");

*Hinck*, 446 F.3d at 1315.  While exceptions to this general rule exist, the ESA "do[es] not

contain the detailed language necessary to remove the enforcement decision [of Customs] from

absolute prosecutorial discretion."  *Strahan*, 967 F. Supp. at 605 n.31.

Furthermore, if the court were to command Customs to enforce § 9, it would be unclear

what legal standards the court could employ to dictate or assess its compliance.  *See Norton*, 542

U.S. at 63–64; *Heckler*, 470 U.S. at 830 (noting that APA review of agency non-enforcement

actions not available when "there is no law to apply") (quotations & citations omitted); *Greater*

*LA Council on Deafness, Inc. v. Baldrige*, 827 F.2d 1353, 1361 (9th Cir. 1987). "[E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830; *accord Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 410–11 (1971); *Greater LA Council on Deafness, Inc.*, 827 F.2d at 1361; *Strahan*, 967 F. Supp. at 605 n.31; *Friedman v. Kantor*, 21 CIT 901, 910, 977 F. Supp. 1242, 1250 (1997), *appeal dismissed*, 155 F.3d 570 (Fed. Cir. 1998), *aff'd*, 156 F.3d 1358 (Fed. Cir. 1998); *cf. Holder v. Hall*, 512 U.S. 874, 883–84 (1994). Plaintiffs argue that 19 C.F.R. § 12.26(g)(1) embodies the standard. Pls.' Reply Br. 9 ("Under these regulations [19 C.F.R. § 12.26(g)(1), 50 C.F.R. §§ 17.31, 223.203(a)], Customs or FWS must check for compliance every shipment of threatened and endangered wildlife") (citing 19 C.F.R. § 12.26(g)(1)). However, the language of that regulation indicates clearly the discretionary nature of the supposed obligation.[12] The Court's inability to review Custom's failure to enforce § 9 prevents Plaintiffs from finding redress for their grievances in this Court. The court therefore must dismiss Plaintiffs' § 9 claim for lack of subject matter jurisdiction.

### 2. Section 7

As an alternate route to obtaining remedy for their injuries, Plaintiffs wish the court to order Customs to carry out the mandate of § 7 and confer with the NMFS to ensure that Customs implements § 9. Section 7 in relevant part states that

---

[12]Section 12.26(g)(1) states that "[a]ll import shipments of fish and wildlife . . . shall *be subject to* examination or inspection" by Customs. 19 C.F.R. § 12.26(g)(1) (emphasis added). In other words, Customs has the power to inspect the imports if it so desires.

> [e]ach Federal agency shall, in consultation with and with the assistance of the Secretary [of Commerce], insure that any *action authorized, funded, or carried out* by such agency (hereinafter in this section referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species . . . .

§ 1536(a)(2) (emphasis added). As other Courts have highlighted, the use of affirmative wording, such as "'authorized, funded, or carried out,'" to delineate agency behavior subject to the § 7 requirements "stands in marked contrast to other sections of the ESA, which explicitly refer to an agency's failure to act." *W. Watersheds Project v. Matejko*, 468 F.3d 1099, 1108 (9th Cir. 2006) (quoting § 1536(a)(2)); *see, e.g.*, § 1540(g)(1)(C) (permitting suits against Secretary of Commerce to remedy his failure to act). This distinction suggests that Congress intended § 7 to apply only to affirmative agency actions and not to those circumstances in which agencies do not exercise their powers. *See W. Watersheds Project*, 468 F.3d at 1108; *Defenders of Wildlife v. EPA*, 420 F.3d 946, 967 (9th Cir. 2005) ("[S]ection 7(a)(2) specifies that agencies must *when acting affirmatively* refrain from jeopardizing listed species . . . ."), *reh'g denied*, 450 F.3d 394 (9th Cir. 2006), *cert. granted sub nom. Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 852 (2007); *EPA v. Defenders of Wildlife*, 127 S. Ct. 853 (2007); *see also id.* at 962 ("The two critical factors triggering this [§ 7] obligation are (1) that the 'action' be . . . an action 'authorized, funded or carried out' by the agency; and (2) that there is . . . a direct or indirect effect 'likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical habitat].'") (quoting § 1536(a)(2)) (last brackets in original); *cf. Envtl. Protection Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1075 (9th Cir. 2001); *TVA*, 437 U.S. at 179. By limiting the provision's application to affirmative agency actions, this restriction on § 7 fits seamlessly with Congress'

intent that administrative agencies employ their authority to protect endangered species and their

habitats without expanding the scope of the agencies' powers.  The agency behavior that

Plaintiffs cite as the catalyst for triggering Customs' § 7 obligations, however, is *failure* to

enforce § 9.[13]  Because non-enforcement constitutes a failure to act, rather than an affirmative

action, § 7 cannot provide the remedy that Plaintiffs seek.  Plaintiffs' § 7 claim therefore fails to

meet the 'case' or 'controversy' requirement of Article III and so is dismissed for lack of subject

matter jurisdiction.

### III.  Conclusion

When Congress passed the Endangered Species Act, it recognized the incalculable value

of the species that modern civilization has pushed toward extinction.  However, in enacting the

ESA, Congress was bound by – and indeed sought to uphold – the delicate and vital balance of

powers envisioned by the Constitution.  The design of the ESA necessarily reflects these

boundaries and limits the means by which the government may act to protect endangered and

threatened species.  While there is no doubt that all involved parties wish for the survival of the

---

[13]During oral argument, Plaintiffs cited to *Pacific Rivers Council v. Thomas*, 30 F.3d 1050 (9th Cir. 1994), to buttress its contention that the court may regulate Customs' behavior in this case because Customs retains discretion to modify its policies.  *See* Tr. 22–23.  However, as the Court of Appeals for the Ninth Circuit noted, the Land and Resource Management Plans ("LRMPs") implemented by the United States Forest Service at issue in *Pacific Rivers Council* "are comprehensive management plans governing a multitude of individual projects." *Pac. Rivers Council*, 30 F.3d at 1053.  As such, LRMPs constitute "ongoing agency action[s]" by the Forest Service, unlike Customs' alleged failure to enforce the importation prohibitions on endangered salmon. *Id.*  The same factors distinguish the present case from *Environmental Protection Information Center v. Simpson Timber Company. See, e.g.*, 255 F.3d at 1079; *see* Tr. 24–25.

Chinook salmon and Snake River Fall Chinook, the solution does not reside in this Court.

Because the Court lacks subject matter jurisdiction, Defendants' motion to dismiss must be, and

hereby is, granted.[14]


March 6, 2007                                                   /s/ Judith M. Barzilay

Dated:_____                    _____
        New York, NY                                           Judith M. Barzilay

---

[14]Because the Court lacks jurisdiction to entertain this matter, Plaintiffs' motion for reconsideration of the court's November 21, 2006 denial of Plaintiffs' motion to supplement the agency record is denied.

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
SALMON SPAWNING & RECOVERY              :
ALLIANCE, *et al.*,                     :
                                        :
        Plaintiffs,                     :
                                        :    Before: Judith M. Barzilay, Judge
        v.                              :    Court No. 06-00191
                                        :
W. RALPH BASHAM, *et al.*,              :
                                        :
        Defendants.                     :
_____ :

**<u>JUDGMENT ORDER</u>**

Upon reading Plaintiffs' motion for judgment on the agency record and Defendants'

motion to dismiss and the parties' responses and replies thereto, and upon due deliberation, it is

hereby

ORDERED that Plaintiffs' motion for judgment on the agency record is DENIED; and it

is further

ORDERED that Defendants' motion to dismiss is GRANTED.


        March 6, 2007                        /s/ Judith M. Barzilay
Dated:_____        _____

        New York, NY                         Judith M. Barzilay, Judge